JEAN T. CASTAGNO ET AL. *v.*
TINA WHOLEAN ET AL.
(15409)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and McDonald, Js.

Argued September 24—officially released November 26, 1996

*Terry Donovan,* for the appellants (plaintiffs).

*Thomas A. Cloutier,* with whom, on the brief, was *Tina Wholean,* for the appellees (defendants).

KATZ, J. The sole issue in this appeal is whether, pursuant to General Statutes § 46b-59,[1] the trial court had subject matter jurisdiction to entertain a petition by grandparents for visitation rights with their minor grandchildren when the grandchildren and their parents were not involved in any case or controversy currently before the court and there was no claim that the family unit was no longer intact. We conclude that although

---

[1] General Statutes § 46b-59 provides: "The superior court may grant the right of visitation with respect to any minor child or children to any person, upon an application of such person. Such order shall be according to the court's best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable, provided the grant of such visitation rights shall not be contingent upon any order of financial support by the court. In making, modifying or terminating such an order, the court shall be guided by the best interest of the child, giving consideration to the wishes of such child if he is of sufficient age and capable of forming an intelligent opinion. Visitation rights granted in accordance with this section shall not be deemed to have created parental rights in the person or persons to whom such visitation rights are granted. The grant of such visitation rights shall not prevent any court of competent jurisdiction from thereafter acting upon the custody of such child, the parental rights with respect to such child or the adoption of such child and any such court may include in its decree an order terminating such visitation rights."

§ 46b-59 lacks specific language imposing any threshold requirement, established rules of statutory construction, the context of the statute and its legislative history support the incorporation of a requirement that plaintiffs must demonstrate disruption of the family sufficient to justify state intervention. In the absence of any attempt by the plaintiffs here to satisfy this threshold requirement, we conclude that the trial court lacked jurisdiction to decide the issue of visitation and, therefore, properly dismissed the plaintiffs' action.[2] Accordingly, we affirm the judgment of the trial court.

The undisputed facts are as follows. Pursuant to § 46b-59, the plaintiffs, Jean and Julius Castagno, parents of the defendant Tina Wholean, brought this action against Wholean and her husband, the defendant William J. Wholean, seeking grandparent visitation with the defendants' minor children. The defendants moved to dismiss for lack of subject matter jurisdiction, claiming that because both parents were still alive, and were not currently involved in any court proceedings that might affect the custody of the children, nor in a state of de facto separation, § 46b-59 did not confer any right to visitation upon the plaintiff grandparents. The trial court determined that unless the family unit had been disrupted by death or de facto separation, the court lacked subject matter jurisdiction under § 46b-59 and dismissed the plaintiffs' action. The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursu-

---

[2] None of the parties disputes whether a motion to dismiss was the proper procedure in this case where the issue is whether, under *any* circumstance, *any* third party can satisfy the requirements of § 46b-59. A motion to dismiss essentially asserts that, as a matter of law and fact, the plaintiff cannot state a cause of action that is properly before the court. *Gurliacci* v. *Mayer*, 218 Conn. 531, 544, 590 A.2d 914 (1991). In this case, because the plaintiffs failed to establish that they fell within the requirements of § 46b-59 so as to be able, as a matter of law, to state a cause of action properly before the court, a motion to dismiss was proper.

ant to Practice Book § 4023 and General Statutes § 51-199 (c).

The plaintiffs argue that the trial court misconstrued § 46b-59 to contain threshold requirements not expressed in the plain language of the statute. Specifically, the plaintiffs claim that the application of § 46b-59 is not limited by any threshold requirements, and that the sole criterion for application of the statute is the best interest of the child. Accordingly, the plaintiffs argue that *any* third party who seeks state intervention, in the form of a court's grant of visitation rights, may petition the court at *any* time, and need not present any allegations that the minor child's family is no longer intact. The plaintiffs further maintain that, because the language of § 46b-59 is clear and unambiguous, it was inappropriate for the trial court to rely on the legislative history of the statute to establish any threshold requirements. We disagree.

When we set out to interpret the meaning of a statute, "our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. *M. DeMatteo Construction Co.* v. *New London,* 236 Conn. 710, 714–15, 674 A.2d 845 (1996); see *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184,* 237 Conn. 114, 120, 676 A.2d 825 (1996); *State* v. *Burns,* 236 Conn. 18, 22–23, 670 A.2d 851 (1996); *State* v. *Spears,* 234 Conn. 78, 86–87, 662 A.2d 80, cert. denied, 516 U.S. 1009, 116 S. Ct. 565, 133 L. Ed. 2d 490 (1995)." (Internal quotation marks omitted.) *Conway* v. *Wilton,* 238 Conn. 663, 663–64, 680 A.2d 242 (1996). Although we first look to the language of the statute, if the application of the

statute to a particular situation reveals a latent ambiguity or inconsistency, we will go beyond the text to determine the statute's meaning. Id., 665. Moreover, we will not limit ourselves to a literal application of the statute if to do so would render other legislation meaningless or superfluous. *State* v. *Szymkiewicz*, 237 Conn. 613, 621, 678 A.2d 473 (1996). In addition, if a literal reading would place the statute in constitutional jeopardy, this court will go beyond the face of the statute to determine whether it may be construed so as to "achieve its purpose in a manner which is both effective and constitutional." *Moscone* v. *Manson*, 185 Conn. 124, 128, 440 A.2d 848 (1981).

Reading the statute literally, as the plaintiffs would have us do, § 46b-59 allows any person, under any circumstances, to petition the court for visitation rights, no matter how remote his or her connection to the child. It is only *after* the matter is brought before the court that he or she would have to show that such visitation would be in the best interest of the child. Such a construction would be a radical departure from the common law and from the deeply ingrained tradition of family autonomy in such matters, would raise serious concerns about the effect of the statute on intact families and the constitutionally protected privacy interests of those families, and would ignore companion statutes that would be made superfluous by its application. We therefore construe the statute to avoid such an unreasonable interpretation. *State* v. *Burns*, supra, 236 Conn. 27; see also *State* v. *DeFrancesco*, 235 Conn. 426, 437, 668 A.2d 348 (1995); *State* v. *Spears*, supra, 234 Conn. 92.

We begin with the common law background against which the visitation statutes were enacted. At common law, grandparents, or third parties in general, have no right to visitation. Rather, the decision as to who may or may not have access to a minor child has been deemed an issue of parental prerogative. M. Quintal,

"Court-Ordered Families: An Overview of Grandparent Visitation Statutes," 29 Suffolk U. L. Rev. 835 (1995); see also C. Bostock, "Does the Expansion of Grandparent Visitation Rights Promote the Best Interests of the Child?: A Survey of Grandparent Visitation Laws in the Fifty States," 27 Colum. J.L. & Soc. Probs. 319, 326 (1994).[3] The common law reflects the belief that the family unit should be respected, and its autonomy and privacy invaded through court action only in the most

---

[3] Consequently, in order to avoid the sometimes harsh consequences of this well established common-law tradition that the fundamental decisions regarding family contact rest with the parents, all fifty states have passed legislation providing for grandparent visitation in certain circumstances. See Ala. Code § 30-3-4 (1989); Alaska Stat. § 25.24.150 (a) (1995); Ariz. Rev. Stat. Ann. § 25-337.01 (1991); Ark. Code Ann. § 9-13-103 (Michie 1993); Cal. Fam. Code § 3103 (Deering 1994); Colo. Rev. Stat. § 19-1-117 (Sup. 1996); Conn. Gen. Stat. §§ 46b-56, 46b-57 and 46b-59 (1995); Del. Code Ann. tit. 10, § 1031 (7) (Sup. 1994); Fla. Stat. Ann. § 752.01 (West 1993); Ga. Code Ann. § 19-7-3 (Sup. 1996); Haw. Rev. Stat. § 571-46.3 (1993); Idaho Code § 32-719 (1996); Ill. Ann. Stat. c. 750, para. 5/607 (b) (1) (Smith-Hurd 1993); Ind. Code Ann. § 31-1-11.7-2 (Burns Sup. 1996); Iowa Code § 598.35 (1993); Kan. Stat. Ann. § 38-129 (1993); Ky. Rev. Stat. Ann. § 405.021 (Michie/Bobbs-Merrill Sup. 1994); La. Rev. Stat. Ann. § 9:344 (West Sup. 1995); Me. Rev. Stat. Ann. tit. 19, §§ 1001 through 1004 (West Sup. 1995); Md. Code Ann., Fam. Law § 9-102 (Sup. 1995); Mass. Ann. Laws c. 119, § 39D (Law. Co-op. 1996); Mich. Stat. Ann. § 25.312 (7b) (Law. Co-op. Sup. 1996); Minn. Stat. § 257.022 (1994); Miss. Code Ann. § 93-16-3 (1994); Mo. Rev. Stat. § 452.402 (1994); Mont. Code Ann. § 40-9-102 (1995); Neb. Rev. Stat. § 43-1802 (1993); Nev. Rev. Stat. § 125A.330 (1995); N.H. Rev. Stat. Ann. § 458:17-d (1992); N.J. Stat. Ann. § 9:2-7.1 (West Sup. 1996); N.M. Stat. Ann. § 40-9-2 (Michie 1994); N.Y. Dom. Rel. Law § 72 (McKinney Sup. 1996); N.C. Gen. Stat. § 50-13.2 (1995); N.D. Cent. Code § 14-09-05.1 (Sup. 1995); Ohio Rev. Code Ann. §§ 3109.051 (B) (1), 3109.11, 3109.12 (Baldwin 1994); Okla. Stat. tit. 10, § 5 (1991); Or. Rev. Stat. § 109.121 (Sup. 1994); 23 Pa. Cons. Stat. Ann. §§ 5311 through 5313 (1991); R.I. Gen. Laws §§ 15-5-24.1 through 15-5-24.3 (1988 and Sup. 1995); S.C. Code Ann. § 20-7-420 (33) (Law. Co-op. Sup. 1995); S.D. Codified Laws Ann. § 25-4-52 (1992); Tenn. Code Ann. § 36-6-302 (1996); Tex. Fam. Code Ann. § 153.433 (West Sup. 1996); Utah Code Ann. § 30-5-2 (Sup. 1996); Vt. Stat. Ann. tit. 15, § 1012 (1989); Va Code Ann. § 16.1-241 (Michie 1996); Wash. Rev. Code § 26.09.240 (1996); W. Va. Code §§ 48-2B-2 through 48-2B-6 (1995); Wis. Stat. § 767.245 (1995); Wyo. Stat. § 20-7-101 (Sup. 1996).

Indeed, absent such statutory authority, visitation rights are controlled by the common law and a court lacks jurisdiction to grant visitation rights to a third party, except in extraordinary circumstances. Such cases have

pressing circumstances. "That right [of the parents to determine the care, custody, and control of their children] is recognized because it reflects a strong tradition founded on the history and culture of Western civilization, and because the parental role is now established beyond debate as an enduring American tradition." (Internal quotation marks omitted.) *Moore* v. *East Cleveland*, 431 U.S. 494, 503 n.12, 97 S. Ct. 1932, 52 L. Ed. 2d 531 (1977).[4] All families may have, at one time

generally involved family disruptions. See, e.g., *Hawkins* v. *Hawkins*, 102 Ill. App. 3d 1037, 430 N.E.2d 652 (1981) (grandparents' daily contact with grandchild after death of child's parent); *Lucchesi* v. *Lucchesi*, 330 Ill. App. 506, 71 N.E.2d 920 (1947) (death of grandchild's father in World War II and provision in will that grandparents act as trustees of fund benefiting grandchild); *Skeens* v. *Paterno*, 60 Md. App. 48, 480 A.2d 820 (1984) (in place of father unable to exercise own visitation rights because of military assignment in distant state); see also C. Bostock, supra, 27 Colum. J.L. & Soc. Probs. 326–27.

[4] Of the fifty state visitation statutes, the majority specifically requires that certain threshold conditions be present before a grandparent may seek court intervention. See Ala. Code § 30-3-4 (1989) (death of parent; dissolution of marriage; disruption of family unit); Alaska Stat. § 25.24.150 (a) (1995) (death of parent; dissolution of marriage); Ariz. Rev. Stat. Ann. § 25-337.01 (1991) (death of parent; dissolution of marriage); Ark. Code Ann. § 9-13-103 (Michie 1993) (death of parent; dissolution of marriage; illegitimacy); Cal. Fam. Code § 3103 (Deering 1994) (dissolution of marriage; legal separation); Colo. Rev. Stat. § 19-1-117 (Sup. 1996) (death of parent; dissolution of marriage); Conn. Gen. Stat. §§ 46b-56, 46b-57 (1995) (custody already at issue); Del. Code Ann. tit. 10, § 1031 (7) (Sup. 1994) (if parents cohabiting, consent of both parents); Fla. Stat. Ann. § 752.01 (West 1993) (death of parent; dissolution of marriage); Ga. Code Ann. § 19-7-3 (Sup. 1996) (custody already at issue); Haw. Rev. Stat. § 571-46.3 (1993) (death of parent; dissolution of marriage); Ill. Ann. Stat. c. 750, para. 5/607 (b) (1) (Smith-Hurd 1993) (death of parent; dissolution of marriage); Ind. Code Ann. § 31-1-11.7-2 (Burns Sup. 1996) (death of parent; dissolution of marriage); Iowa Code § 598.35 (1993) (death of parent; dissolution of marriage); La. Rev. Stat. Ann. § 9:344 (West Sup. 1995) (death of parent; dissolution of marriage); Me. Rev. Stat. Ann. tit. 19, §§ 1001 through 1004 (West Sup. 1995) (death of parent); Mass. Ann. Laws c. 119, § 39D (Law. Co-op. 1996) (death of parent; dissolution of marriage); Mich. Stat. Ann. § 25.312 (7b) (Law. Co-op. Sup. 1996) (death of parent; dissolution of marriage); Minn. Stat. § 257.022 (1994) (death of parent; dissolution of marriage; grandchild has lived with grandparent longer than twelve months); Miss. Code Ann. § 93-16-3 (1994) (death of parent; dissolution of marriage); Mo. Rev. Stat. § 452.402 (1994) (death of parent; dissolution

or another, unhappy conflicts and disputes among adult relatives that might result in an absence of contact between those adults and their minor relatives—be they grandchildren, nieces or nephews, cousins, etc.—but longstanding tradition holds that, absent compelling circumstances justifying some state intervention in the form of a judicial order, the parents' decision, whether wise or not, prevails.

The plaintiffs concede that the common law of Connecticut does not provide for grandparent visitation. The plaintiffs also acknowledge the common-law right in Connecticut of parents to raise their children without excessive government interference. "This right to family integrity includes 'the most essential and basic aspect of familial privacy—the right of the family to remain together without the coercive interference of the awesome power of the state.'" *In re Juvenile Appeal (83-CD)*, 189 Conn. 276, 284, 455 A.2d 1313

of marriage; grandparent has been denied visitation unreasonably for more than three months); Neb. Rev. Stat. § 43-1802 (1993) (death of parent; dissolution of marriage); Nev. Rev. Stat. § 125A.330 (1995) (death of parent; dissolution of marriage); N.H. Rev. Stat. Ann. § 458:17-d (1992) (death of parent; dissolution of marriage); N.M. Stat. Ann. § 40-9-2 (Michie 1994) (death of parent; dissolution of marriage; grandchild has lived with grandparent); N.Y. Dom. Rel. Law § 72 (McKinney Sup. 1996) (death of parent; exceptional circumstances); N.C. Gen. Stat. § 50-13.2 (1995) (custody must already be in issue); Ohio Rev. Code Ann. §§ 3109.051 (B) (1), 3109.11, 3109.12 (Baldwin 1994) (dissolution of marriage); 23 Pa. Cons. Stat. Ann. §§ 5311 through 5313 (1991) (death of parent; dissolution of marriage; child has lived with grandparent); R.I. Gen. Laws §§ 15-5-24.1 through 15-5-24.3 (1988 and Sup. 1995) (grandparent thwarted in repeated attempts at visitation in past six months); S.C. Code Ann. § 20-7-420 (33) (Law. Co-op. Sup. 1995) (death of parent; dissolution of marriage); Tex. Fam. Code Ann. § 153.433 (West Sup. 1996) (death or incarceration of parent; dissolution of marriage; allegations of abuse or neglect); Utah Code Ann. § 30-5-2 (Sup. 1996) (death of parent; dissolution of marriage); Vt. Stat. Ann. tit. 15, § 1012 (1989) (death or incompetence of parent); W. Va. Code §§ 48-2B-2 through 48-2B-6 (1995) (death of, or abandonment by, parent; dissolution of marriage); Wis. Stat. § 767.245 (1995) (established parent-child relationship between grandparent and grandchild); Wyo. Stat. § 20-7-101 (Sup. 1996) (death of parent; dissolution of marriage).

(1983). "It is an established rule of statutory construction that statutes are not readily interpreted as abrogating common-law rights." (Internal quotation marks omitted.) *State* v. *Nugent*, 199 Conn. 537, 548, 508 A.2d 728 (1986). The plaintiffs' interpretation of § 46b-59 would abrogate that right entirely. Given the tradition of parental authority over family matters and the common-law background that it expresses, we are hesitant to read statutory language literally so as to abrogate it entirely, without convincing evidence that the language was intended to do so. There is no such evidence here. Indeed, what evidence there is before us is to the contrary.

The right to family autonomy and privacy acknowledged in the common law has been recognized as so fundamental as to merit constitutional protection. Consequently, any legislation affecting it is strictly scrutinized. See *Wisconsin* v. *Yoder*, 406 U.S. 205, 220–21, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972); *Pierce* v. *Society of Sisters*, 268 U.S. 510, 534–35, 45 S. Ct. 571, 69 L. Ed. 2d 1070 (1925); *Meyer* v. *Nebraska*, 262 U.S. 390, 399–400, 43 S. Ct. 625, 67 L. Ed. 2d 1042 (1923); *McGaffin* v. *Roberts*, 193 Conn. 393, 400, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985).[5] We ordinarily read statutes "to avoid, rather than to create, constitutional questions." *In re Valerie D.*, 223 Conn. 492, 534, 613 A.2d 748 (1992). Moreover, courts "are bound to assume that the legislature intended, in enacting a particular law, to achieve its purpose in a manner which is both effective and constitutional." *Moscone* v. *Manson*, supra, 185 Conn. 128. "[T]his presumption of constitutionality imposes upon

---

[5] When the legislature attempts to infringe upon a fundamental constitutional right, that legislation is subject to a two part test: "[1] regulations . . . may be justified only by a compelling state interest, and . . . [2] legislative enactments must be narrowly drawn to address only the legitimate state interests at stake." (Internal quotation marks omitted.) *In re Juvenile Appeal (83-CD)*, supra, 189 Conn. 285.

the trial court, as well as this court, the duty to construe statutes, whenever possible, in a manner that comports with constitutional safeguards of liberty." *State* v. *Floyd*, 217 Conn. 73, 88, 584 A.2d 1157 (1991).

The plaintiffs' construction of § 46b-59 would allow the court to intrude upon an intact family that has not already opened itself to such intrusion through the type of disruption contemplated by General Statutes §§ 46b-56[6] and 46b-57.[7] The literal application of the statute in this case could place the statute in constitutional jeopardy. Any potential constitutional infirmity is avoidable if we construe § 46b-59 to incorporate threshold requirements similar to those of §§ 46b-56 and 46b-57.

---

[6] General Statutes § 46b-56 provides in pertinent part: "Superior court orders re custody and care of minor children in actions for dissolution of marriage, legal separation and annulment. Access to records of minor child by noncustodial parent. Parenting education program. (a) In any controversy before the superior court as to the custody or care of minor children, and at any time after the return day of any complaint under section 46b-45, the court may at any time make or modify any proper order regarding the education and support of the children and of care, custody and visitation if it has jurisdiction under the provisions of chapter 815o. Subject to the provisions of section 46b-56a, the court may assign the custody of any child to the parents jointly, to either parent or to a third party, according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable. The court may also make any order granting the right of visitation of any child to a third party, including but not limited to, grandparents. . . ."

[7] General Statutes § 46b-57 provides: "Third party intervention re custody of minor children. Preference of child. In any controversy before the superior court as to the custody of minor children, and on any complaint under this chapter or section 46b-1 or 51-348a, if there is any minor child of either or both parties, the court if it has jurisdiction under the provisions of chapter 815o, may allow any interested third party or parties to intervene upon motion. The court may award full or partial custody, care, education and visitation rights of such child to any such third party upon such conditions and limitations as it deems equitable. Before allowing any intervention, the court may appoint counsel for the child or children pursuant to the provisions of section 46b-54. In making any order under this section the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference."

This construction would allow § 46b-59 to be invoked only in those instances in which the integrity of the family already has been disrupted. Because § 46b-59 operates in the delicate realm of parent-child relationships, we prefer a construction that minimizes state intrusion. *In re Valerie D.*, supra, 223 Conn. 514.

In addition to the common-law and constitutional considerations that undermine a literal interpretation of § 46b-59, that section's contextual interplay further compels us to incorporate a threshold requirement. " 'It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions.' " *State* v. *Szymkiewicz*, supra, 237 Conn. 621. "[I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." *Hayes* v. *Smith*, 194 Conn. 52, 58, 480 A.2d 425 (1984). These same principles lead us to believe that the legislature does not ordinarily intend to leave in effect statutes that have been rendered superfluous by later enactments. This is, however, precisely the conclusion the plaintiffs ask us to reach in regard to the companion visitation statutes to § 46b-59.

Prior to the enactment of § 46b-59, visitation rights were addressed by General Statutes (Rev. to 1977) §§ 46-42 and 46-47, now §§ 46b-56[8] and 46b-57.[9] These sections remained in effect subsequent to the passage of § 46b-59. Pursuant to §§ 46b-56 and 46b-57, when the issue of the custody or care of a minor child is before the court, a third party may be granted visitation rights. These sections apply only to situations in which a controversy is already pending before the court.

Although §§ 46b-56 and 46b-57 establish the threshold requirement of a pending controversy that must be satis-

[8] See footnote 6.
[9] See footnote 7.

fied before a third party may intervene to achieve the care, custody or visitation of minor children, the plaintiffs would have this court hold that § 46b-59 contains no such threshold requirement. If that were true, however, we would be hard-pressed to understand why any party would seek visitation under § 46b-56 or § 46b-57, given their higher standard, or to see why the legislature would not have repealed that aspect of those statutes upon the passage of § 46b-59. We must "assume that the legislature acted with knowledge of existing statutes and with an intent to create one consistent body of laws." (Internal quotation marks omitted.) *First Federal Bank, FSB* v. *Whitney Development Corp.*, 237 Conn. 679, 691–92, 677 A.2d 1363 (1996).

Our examination of the legislative history of § 46b-59 further challenges the plaintiffs' interpretation. In 1978, the Connecticut legislature passed No. 78-69 of the 1978 Public Acts, entitled "An Act Concerning Visitation Rights of Grandparents in Case of Death or Separation." That public act was codified as § 46b-59, one of a series of statutes related to the dissolution of marriage, legal separation and annulment.[10] When it was initially introduced in the legislature, the bill's first paragraph contained language referring to situations in which the family was no longer intact, either through death or de facto separation.[11] That language was removed, how-

---

[10] General Statutes § 46b-40 et seq.

[11] The bill was introduced during the 1978 legislative session of the General Assembly as Substitute Senate Bill No. 48, and provided in pertinent part: "An Act Concerning Visitation Rights of Grandparents in Case of Death or Separation. Be it enacted by the Senate and House of Representatives in General Assembly convened: (NEW) Whenever any husband and wife, who have any minor child or children, are living apart, or whenever a person has died leaving a minor child or children surviving, the superior court, upon motion of any grandparent of such minor child or children, may order the right of visitation of such child or children to such grandparent. Such order shall be according to the court's best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable. In making, modifying or terminating such an order, the court shall be guided

ever, in the process of amendment, prior to the bill's passage.[12] There is no indication in the legislative history to explain why the language referring to death or de facto separation was deleted from the final version of the bill. In fact, Senator Lewis B. Rome, the proponent of Senate Amendment B, the amendment that deleted the language, stated that the only purpose of the amendment was to clarify the fact that the bill applied to both legitimate and illegitimate minor children. 21 S. Proc., Pt. 2, 1978 Sess., p. 763. Moreover, when the Senate amendment was introduced in the House of Representatives for adoption, it was done so with the limiting language intact: "Senate Amendment Schedule 'B' just indicates that the Superior Court may grant rights of visitation to grandparents in the case of a separation of a husband and wife or in the case when a husband or wife has died leaving a minor child whether or not such child or children are legitimate, and that's the substantive difference between the amendment and the file copy." 21 H.R. Proc., Pt. 5, 1978 Sess., p. 1992, remarks of Representative Ernest N. Abate.

Thus, although the express language concerning death and de facto separation had been removed by the time the bill was signed into law, it is clear from the floor discussions in both the House of Representatives and the Senate that the legislators had been focusing on providing a remedy for those grandparents who sought visitation under circumstances analogous to those already addressed by §§ 46b-56 and 46b-57, but in which the jurisdiction of the trial court had not already been invoked. "[T]he existing law is . . . that the grandparents can intervene in a divorce action or an annulment or legal separation and move to have visitation rights with the children . . . ." 21 S. Proc.,

by the best interests of the child, giving consideration to the wishes of such child if he is of sufficient age and capable of forming an intelligent opinion."
[12] 21 S. Proc., Pt. 2, 1978 Sess., pp. 762–63.

Pt. 2, 1978 Sess., pp. 765–66, remarks of Senator Salvatore C. DePiano. "What this bill attempts to do is simply to extend it to the situation . . . where the parties just split up and they begin no divorce action and they begin no action for legal separation." Id., pp. 768–69, remarks of Senator George C. Guidera. "This General Assembly last year enacted the bill that permitted grandparents to have visitation rights in the event of divorce. It did not, however, deal with the case . . . where there was no divorce but one parent died." Id., p. 771, remarks of Senator Barbara D. Reimers.

Any voiced opposition to the bill was confined solely to the effect *any* court battle over visitation might have on a young child and cautioning against expanding the circumstances in which a grandparent might seek visitation. As one opponent stated: "[This bill] expands the possibilities of a contentious kind of litigation where ultimately the children are the victims, and there ought to be the ability on the part of the parents to run their own households. This kind of thing, which opens up to judicial second guess a decision which should properly be left in the home, is certainly going to create more opportunity than now exists for the kind of seesaw battle which so very often involves children in other kinds of domestic cases." Id., pp. 764–65, remarks of Senator Joseph P. Flynn. Although Senator Flynn's remarks could be read to support the plaintiffs' claim that the statute was understood to be broader than the interpretation we are here adopting, we cannot read the senator's words so as to override all the other commentary in favor of our more limited reading, particularly when there is no convincing evidence to support the plaintiffs' literal interpretation and to do so would undermine the aforementioned common-law and constitutional considerations.

At no time did any member of the Senate or House of Representatives suggest that the bill would or should

allow grandparents to seek visitation with minor grandchildren no matter what the circumstances. Rather, the legislative history indicates solely the desire on the part of the General Assembly to address a specific problem—how to provide access to the courts for grandparents whose grandchildren's families have been disrupted in a manner similar to that addressed by §§ 46b-56 and 46b-57, but in which the courts have not yet become involved.

Since its initial enactment, § 46b-59 has been twice amended: first in 1979, to clarify that visitation was not to be made contingent upon any payment of support,[13] and again in 1983, to extend standing to petition to any person.[14] The discussion in the legislature as to these amendments, although minimal, nonetheless indicates a legislative understanding that the threshold require-

[13] See Public Acts 1979, No. 79-8, entitled "An Act Concerning Visitation Rights of Grandparents."

[14] Public Acts 1983, No. 83-95, entitled "An Act Concerning Visitation Rights," provides: "Section 46b-59 of the general statutes is repealed and the following is substituted in lieu thereof:

"The superior court may grant the right of visitation [to any grandparent or grandparents of] WITH RESPECT TO any minor child or children TO ANY PERSON, upon an application of such [grandparent or grandparents, whether or not such child or children are legitimate, except the court may not make an order with respect to the parents of the father of any illegitimate child or children unless the father has acknowledged paternity in writing, has been adjudicated the father by a court of competent jurisdiction or has contributed regularly to the support of the child or children] PERSON. Such order shall be according to the court's best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable, provided the grant of such visitation rights shall not be contingent upon any order of financial support by the court. In making, modifying or terminating such an order, the court shall be guided by the best interest of the child, giving consideration to the wishes of such child if he is of sufficient age and capable of forming an intelligent opinion. Visitation rights granted in accordance with this section shall not be deemed to have created parental rights in the person or persons to whom such visitation rights are granted. The grant of such visitation rights shall not prevent any court of competent jurisdiction from thereafter acting upon the custody of such child, the parental rights with respect to such child or the adoption of such child and any such court may include in its decree an order terminating such visitation rights."

ment of death or de facto separation was part of the legislation. One supporter of No. 79-8 of the 1979 Public Acts, which established that visitation could not be tied to support payments, voiced his understanding of that intent, stating: "This honorable body, I believe, last year passed a bill granting grandparents the opportunity to have reasonable visitation of their grandchildren in a situation where the . . . husband and wife are either divorced or if the family is broken up." 22 S. Proc., Pt. 2, 1979 Sess., p. 447, remarks of Senator Salvatore C. DePiano.

The most recent amendment, No. 83-95 of the 1983 Public Acts, which extended standing to any third person, was passed with very little comment in either the House of Representatives or the Senate, but appears to have been in response to perceived concerns that persons other than grandparents should be allowed to seek visitation. The plaintiffs correctly point out that § 46b-59, as so amended, has been cited by this court as providing standing to third parties who seek visitation rights. In all of those cases, however, there had already been some intrusion by the court or the state into the privacy of the child's family. See generally *Michaud* v. *Warwick*, 209 Conn. 407, 551 A.2d 738 (1988) (biological mother permitted visitation with child following child's adoption); *Temple* v. *Meyer*, 208 Conn. 404, 544 A.2d 629 (1988) (former boyfriend who originally brought action seeking custody of former girlfriend's child, mistakenly believed to be his, permitted to amend his claim to one seeking visitation); see also *In re Jennifer P.*, 17 Conn. App. 427, 553 A.2d 196, cert. denied, 211 Conn. 801, 559 A.2d 1136 (1989) (former foster parent permitted to seek visitation).

We see nothing in the legislative history to suggest that the subsequent amendments were enacted in an effort to depart from the initial legislative intent to confine the application of § 46b-59 to situations in

which the family already has been somehow disrupted, warranting the state's intrusion upon the integrity of the family unit, thus confirming our conclusion that § 46b-59 by implication contains such a threshold requirement.[15]

Our application of the rules of statutory construction and our examination of the legislative record lead us to conclude that the legislature intended § 46b-59 to afford the trial court jurisdiction to entertain a petition for visitation only when the minor child's family life has been disrupted in a manner analogous to the situations addressed by §§ 46b-56 and 46b-57. At this time we need not state precisely which circumstances will suffice to invoke the trial court's jurisdiction under § 46b-59. Although the death of a parent or the de facto separation of the parents may allow an action, there may be other times when an action is also warranted, such as when there has been a good faith allegation by a third party of abuse or neglect.[16] A party seeking visitation rights must, however, in the pleadings, set forth with specific-

[15] Because the constitutionality of any statute cannot be determined under a "hypothetical set of facts as yet unproven"; *Lehrer* v. *Davis*, 214 Conn. 232, 234–35, 571 A.2d 691 (1990); and because current sociocultural definitions of "family" are so fluid as to create myriad factual circumstances to which this statute, as we have interpreted it, may apply, we are not prepared to say whether our interpretation of this statute, or a statute of any sort that may be enacted in response to our interpretation, would be constitutional in a given factual circumstance. All we decide today is that, in order to avoid the most obvious constitutional problems that arise from a literal interpretation of § 46b-59, the statute must be read to recognize the legislative intent that certain threshold requirements be met before a party may invoke its authority.

[16] We note that in any case in which there have been allegations of abuse or neglect, the state may become involved through the reporting procedures of the department of children and families, which may lead to the state's intervention in the care and custody of the child in question. See General Statutes §§ 17a-101 through 17a-103. Moreover, in any case in which the department responds by seeking court intervention, there would be a "controversy before the superior court as to the custody of minor children" that would allow the court to invoke its jurisdiction to act pursuant to § 46b-57.

ity the factual bases for the petition before the court can determine whether such threshold conditions have been met. In this case, the plaintiffs did not rely on any such allegations to invoke the trial court's authority.[17]

The judgment is affirmed.

In this opinion CALLAHAN, C. J., and BORDEN, NORCOTT and PALMER, Js., concurred.

MCDONALD, J., with whom BERDON, J., joins, concurring. I concur in the result reached by the majority. I write separately, however, because I conclude that General Statutes § 46b-59[1] is facially unconstitutional.

Section 46b-59 as drafted by the legislature, in its plain words, provides unwarranted and overly broad rights of "any person" to disrupt the fundamental right of a parent, absent the most exceptional circumstances, to raise a child. See *Wisconsin* v. *Yoder*, 406 U.S. 205, 229–34, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972); *Pierce* v. *Society of Sisters*, 268 U.S. 510, 534–35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925); *Meyer* v. *Nebraska*, 262 U.S. 390, 399–400, 43 S. Ct. 625, 67 L. Ed. 1042 (1923); *In re Valerie D.*, 223 Conn. 492, 512–14, 613 A.2d 748 (1992); *McGaffin* v. *Roberts*, 193 Conn. 393, 400, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985); *In re Juvenile Appeal (83-CD)*,

---

[17] The plaintiffs claim that they formulated their pleadings in reliance upon this court's decision in *Lehrer* v. *Davis*, 214 Conn. 232, 571 A.2d 691 (1990). That reliance was misplaced. The essential holding of *Lehrer* was that this court will not decide constitutional issues in a factual vacuum. Id., 234. We did not decide whether the facts as pleaded by the plaintiffs in that case otherwise met the requirements of § 46b-59.

[1] General Statutes § 46b-59 provides in relevant part: "The superior court may grant the right of visitation with respect to any minor child or children to *any person*, upon an application of such person. Such order shall be according to the court's best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable . . . . In making, modifying or terminating such an order, the court shall be guided by the best interest of the child . . . ." (Emphasis added.)

189 Conn. 276, 284, 455 A.2d 1313 (1983). As such, it is facially and hopelessly unconstitutional.

When originally introduced in 1978 as Substitute Senate Bill No. 48, § 46b-59 provided in part: "Whenever any husband and wife, who have any minor child or children, are living apart, or whenever a person has died leaving a minor child or children surviving, the superior court, upon motion of any grandparent of such minor child or children, may order the right of visitation of such child or children to such grandparent. . . ." The language of the bill limiting visitation rights to grandparents where the family was no longer intact was removed, however, prior to the bill's passage. The legislature further broadened § 46b-59 in 1983 when it extended visitation rights from grandparents to "any person." Public Acts 1983, No. 83-95. These changes leave § 46b-59 in striking contrast to the laws of our sister states that require exceptional circumstances before the state may intrude upon parental rights and grant visitation rights to grandparents.[2]

The plain language of § 46b-59 now creates the broadest possible right of visitation. It provides that any person may petition, even absent exceptional circumstances, for visitation rights no matter how remote the connection to the child and may do so repeatedly. In order to save the statute, the majority here adds the salutary requirement that "any person" must make a threshold showing of exceptional circumstances. The addition of the threshold requirement is not legislative interpretation but direct legislation, engrafting to the legislative text language simply not found or suggested by the plain words of § 46b-59. In effect, the majority inserts into the statute some of the very same language removed from the bill as it went through the legislature.

---

[2] See footnote 4 of the majority opinion.

See *Local 218 Steamfitters Welfare Fund* v. *Cobra Pipe Supply & Coil Co.*, 207 Conn. 639, 645, 541 A.2d 869 (1988); *Zapata* v. *Burns,* 207 Conn. 496, 503–504, 542 A.2d 700 (1988); *Schurman* v. *Schurman,* 188 Conn. 268, 273, 449 A.2d 169 (1982); *Houston* v. *Warden,* 169 Conn. 247, 251, 363 A.2d 121 (1975); see also *Sassone* v. *Lepore,* 226 Conn. 773, 790, 629 A.2d 357 (1993) (*Berdon, J.,* with whom *Katz, J.,* joins, dissenting).

The majority has struggled rightly to consider the sympathetic circumstance of a grandparent's desire to visit a grandchild in the face of a family disruption. The majority, however, is unable to narrow the statute's application in the case of rebellious teenage romances, meddling distant relatives and in-laws, total strangers and overly controlling friends and neighbors. It would also allow repeated and expensive court battles that may wear down the parent, totally disrupt the family discipline and put a judge continuously and unconstitutionally into the home.

Section 46b-59, admitted by all parties to be as broad an invasion of the family autonomy and privacy as could be drawn, is, in my opinion, beyond saving. It provides a vehicle for too much mischief and meddling in a family's constitutionally protected private business. The trial court struggled with the plain words of § 46b-59 and this court has now taken on the task, better left to the legislature, of solving the problem created by those plain words. We dodged the bullet in *Lehrer* v. *Davis,* 214 Conn. 232, 238, 571 A.2d 691 (1990), by holding that the constitutionality of § 46b-59 could not be decided in a factual vacuum. The time has now come, however, to consign this unconstitutional, intrusive and vexatious legislation to its deserved fate. See, e.g., *Wisconsin* v. *Yoder,* supra, 406 U.S. 205; *Meyer* v. *Nebraska,* supra, 262 U.S. 390.

I would affirm the judgment of the trial court dismissing the petition for visitation of children of an intact family, but on the ground that § 46b-59 is facially unconstitutional.