[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action is brought by the paternal grandmother seeking visitation with her grandchild, Hannah, d.o.b. February 21, 1989, who has lived with her mother since the child's parents' marriage was dissolved by decree on January 23, 1991. The mother was awarded sole custody with rights of supervised visitation at the home of either paternal grandparent given to the father.[1]
Post judgment disputes arose between the parents of Hannah in 1993. The issues were referred to the Family Relations Office.
On or about June 5, 1994, the mother refused to allow the paternal grandmother to supervise visitation between Hannah and her son. Further, Hannah's mother refused to allow any visitation between Mrs. Stewart and Hannah.
The paternal grandmother then sought to intervene in the dissolution case on July 1, 1994.
On September 2, 1994 the mother filed a Motion To Modify Visitation. Hannah's parents reached a stipulation that excluded Mrs. Stewart as a supervisor. The court approved it on December 5, 1994. By writ, summons and complaint dated February 16, 1996, Mrs. Stewart began the present action. On April 1, 1996 the court dismissed the motion to intervene pending in the dissolution action as moot.
The trial of this case began on October 22, 1997 and the court took the papers on September 8, 1998 after the attorneys for the plaintiff and the defendant resolved their dispute concerning the defendant's brief.
Mrs. Stewart, hereinafter referred to as plaintiff, is proceeding pursuant to Conn. Gen. Stat. § 46b-59. In CastagroCT Page 14366v. Wholean, 239 Conn. 336 (1966) the plaintiffs sought visitation with their grandchildren. The trial court granted the parents' motion to dismiss, finding that no controversy existed between the plaintiffs and defendants, nor was there any claim that the family unit was no longer intact. On appeal the Supreme Court held that the plaintiffs' action was properly dismissed on the finding that the trial court lacked jurisdiction to decide the issue.
The common law of Connecticut does not provide for grandparent visitation, Id. p. 343.
 "The common law reflects the belief that the family unit should be respected, and its autonomy and privacy invaded through court action only in the most pressing circumstances." (emphasis added) Id. pp. 341-342.
The statute in question was passed to:
 ". . . afford the trial court jurisdiction to entertain a petition for visitation only when the minor child's family life has been disrupted in a manner and analogous to the situations addressed by § 46b-56 and § 46b-57."Id.
p. 352.
The case then suggests that death of a parent or the defacto separation of the parents may allow an action. The defendant invites the court to consider the defendant's challenge to the constitutionality of the statute in question. In light of the Supreme Court's recent decision, the invitation is declined.
The defendant next raises the issue of alleging the specificity of some disruption in the minor child's family life. The amended complaint alleges the dissolution action referred to above. The court finds that allegation sufficient.
The statute directs that the court:
 ". . . shall be guided by the best interest of the child, giving consideration to the wishes of such child if he is of sufficient age and capable of forming an intelligent opinion."
The court found Hannah competent to testify. The court spoke to Hannah in chambers on the record utilizing a series of CT Page 14367 questions agreed upon by all counsel. The child expressed no desire to visit with the plaintiff.
The court finds that animosity has existed between the plaintiff and defendant since the breakdown of the defendant's marriage. The defendant described an event where the plaintiff testified as a witness for her son in a matter involving him and the defendant. The South Salem court dismissed the charge. The court finds the events of May, 1994 involving a white discharge from the child's genital area observed by the defendant's boyfriend and defendant more than 24 hours after the completion of the child's visit with the plaintiff and the defendant's accusation that the plaintiff was responsible for it not proven by the evidence advanced in the case. The defendant assumed the plaintiff was responsible for the discharge. The child remarked that she did not know what it was or where it came from. (Court Exhibit II, Dr. Alexander's report, page 4).
The plaintiff's expert witness, Dr. Karen Alexander, testified that visitation could safely occur. The recommendation is founded on the condition that:
 "Ms. Apy would need to support it or at least be neutral . . ." (Court Exhibit II, p. 4)
The court finds no evidence that the defendant would or will be neutral. As Castagno notes:
 "All families may have, at one time or another, unhappy conflicts and disputes among adult relatives that might result in an absence of contact between those adults and their minor relatives . . .".
In the present case both plaintiff and defendant contributed to the "unhappy conflicts and disputes" as did the plaintiff's son before his sudden and untimely death on January 17, 1998.
Much of the evidence would have been germane if custody was in issue, but the living quarters and the lifestyle of the defendant are not relevant except on the issue of credibility. The court has evaluated the credibility of all the witnesses and reached the foregoing factual conclusions.
The resumption of visitation between the plaintiff and Hannah will put the child back in the middle of the animosity existing CT Page 14368 between the parties. There was not sufficient evidence offered to demonstrate how visitation between the plaintiff and Hannah would be in the child's best interest considering the enmity existing between the plaintiff and defendant.
Judgment is entered for the defendant.
Harrigan, J.