[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum
The Petitioner, Steven Butler, is the former stepfather of the minor, Theodore Austin (DOB: 2/27/84), child of the parties to this action. Mr. Butler has moved, pursuant to Conn. Gen. Stat. § 46b-59, to intervene for the purpose of obtaining visitation rights with that minor. The defendant has moved to dismiss the motion for lack of subject matter jurisdiction. She claims the Petitioner has failed to allege the necessary threshold requirements as articulated by our Supreme Court inCastagno v. Whalen, 239 Conn. 336 (1996). The Petitioner has filed an objection thereto and a supporting memorandum.
In pertinent part, Conn. Gen. Stat. § 46b-59 provides:
 The Superior Court may grant the right of visitation with respect to any minor child or children to any person, upon an application of such person. Such order shall be according to the court's best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable, provided the grant of such visitation rights shall not be contingent upon any order of financial support by the court. In making, modifying, or terminating such an order, the court shall be guided by the best interest of the child, giving consideration to the wishes of such child if he is of sufficient age and capable of forming an intelligent opinion.
Though, on its face, the statute appears to present no jurisdictional impediment, decisional law has engrafted a requirement the Petitioner must satisfy before jurisdiction is conferred. In Castagno, supra, the Court was presented the issue whether, pursuant to this statute, the trial court had subject matter jurisdiction to entertain a petition by grandparents for visitation with their minor grandchildren when the children and their parents were not then involved in a case before the court and there was no claim the family was not intact. The Court concluded established rules of statutory construction, the context of the statute, and its legislative history supported the incorporation of a CT Page 14367-o requirement there must be a showing the disruption of the family is sufficient to justify state intervention. Specifically, the Court concluded, "[T]he legislature intended § 46b-59 to afford the trial court jurisdiction to entertain a petition for visitation only when the minor child's family life has been disrupted in a manner analogous to the situations addressed by §§ 46b-56 and 46b-57." 239 Conn. 336, at 352. Finding the plaintiff had failed to satisfy that requirement and that the trial court therefore had no power to decide the visitation issue, it affirmed the lower court's dismissal of the action.
C.G.S. § 46b-56 refers to custody orders;[1] sub-section (a) begins, "In any controversy before the Superior Court as to the custody or care of minor children C.G.S. § 46b-57 relates to third-party intervention with regard to the custody of minor children; it begins, "In any controversy before the Superior Court as to the custody of minor children . . ." Thus, both statutes require a pending custody dispute. That is conspicuously absent here. If "analogous to the situations addressed by §§ 46b-56 and 46b-57" means a pending controversy with regard to the care and custody of children, this Petitioner's motion must fail, since, prior to Mr. Butler's first filing of motions in February of 1999, there had been no activity of any kind since June of 1996 — thirty-two (32) months earlier. The defendant mother's claim the Petitioner has failed to allege in his pleading the necessary threshold requirement is, the Petitioner claims, refuted by virtue of an affidavit previously submitted.[2] Mr. Butler there claimed that, while married to the defendant for five (5) years,[3] he lived with her two children by a prior marriage (one of which is the minor child in question) and developed a parent-child relationship with each. The affidavit detailed this minor's involvement with the juvenile system as a result of property damage charges and described suicidal thoughts which led to the boy's admission to the Yale Psychiatric Institute for intensive treatment. It recited the youth's statement to the Petitioner he could not any longer take living with the defendant whom the document characterized as rigid, punitive, and controlling. The affidavit asserted the Petitioner's relationship with the minor soured when the parties to this action (the child's parents), on or about March 1, 1999, forbade him to have any contact whatsoever with the child. In February of 1999, the minor asked the Petitioner to take him in so that he would not have to live with either parent (both of whom have re-married and live in different states). In a reversal, the father has since determined it is not in the child's best interest to live with his mother and the father no longer objects to the Petitioner's being granted visitation rights.
This court cannot conclude the minor's family is not "intact" since it CT Page 14367-p is provided no information regarding the relationship between the boy and his mother since the Petitioner's last contact with him on or about March 1, 1999. Nor, in this age of multiple marriages and stepchildren by layers, can it be said a family is fractured either by reason of multiple subsequent marriages or by reason of divorced partners embracing different child-rearing philosophies or methods of child discipline. As this court stated in an earlier memorandum of decision,[4]
correspondence in the court file between this Petitioner and the plaintiff father and between the plaintiff father and the Family Services Division is "indicative of a difference of opinion between private parties and not a "controversy before the Superior Court.'"
It is often said that good cases make bad law and this case may be the classic example if, as it would appear, the Petitioner's only interest is in spending time and re-establishing a relationship with a troubled youth for whom the Petitioner could make a meaningful difference. Yet, this court is mindful that the right to family autonomy and privacy is so fundamental a right as to be afforded constitutional protection. To interpret C.G.S. § 46b-59 so broadly as to permit the intervention of any person for visitation purposes in a case dormant for almost three (3) years and when that family's life is not otherwise being scrutinized by a court would be not only to abrogate the common law right to raise one's children as one sees fit and to resolve inter-family disputes and respond to crises free of state intervention but would potentially open the courts to a floodgate of litigation by fiends, neighbors, relatives, and others in the community who — for whatever their private reasons — seek to invade the sanctity of an apparently intact family regardless of how remote the putative intervener's connection to the child. To permit such unrestricted access would itself be disruptive of family autonomy. While many would argue it takes a village to provide an environment in which each child can flourish, few would espouse the right of individual villagers to undermine the parents' right to direct the care, custody, and control of their child absent very compelling circumstances not here presented.
The Motion to Dismiss is granted.
SHEEDY, J.