[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CT Page 2077 RE MOTION TO MODIFY VISITATION #126
This case was instituted by Richard Denardo, Jr., the biological father of the, minor child, Courtney Denardo, born April 20, 1994, by petition for custody and visitation brought to this court on August 28, 1998.
I. Procedural History
On October 15, 1998, the parent-parties agreed to a visitation schedule. One condition of the agreement provided that the grandparents and Patricia Denardo would not see the child without her father being present. The agreement also provided that the grandparents would not telephone Bergamo nor be present when the child was picked up for visitation at Bergamo's home. On November 13, 1998, the paternal grandparents moved to intervene and to be granted visitation pursuant to Connecticut General Statutes § 46b-59. Their motion to intervene was granted by agreement of January 11, 1999. In addition, the agreement provided that the grandmother, Patricia Denardo, and the mother would attend mediation. The grandparents and mother also agreed that the grandparents would have unsupervised visitation during the father's designated visitation time but they would not have overnight visits with Courtney. (File No. 111).
Bergamo filed a motion for sole custody which was not pursued. In July she filed a motion to modify visitation on the grounds that the child's entering of school in September would necessitate a change in weekday visitation. (File no. 124) Pursuant to orders entered by the court (Kocay, J.) on September 20, 1999, the grandparents were permitted to pick up the child at school dismissal time at 2:55 p.m. on Tuesday and return her to her mother at 7:00 p.m. The father was to have visitation on alternating weekends from 6:00 p.m. Friday to 7:00 p.m. Sunday. When the father did not have weekend visitation, the Denardos could pick up the child at school on Friday. Her father would then return her to her mother at 8:00 p.m. (File No. 124).
On February 12, 2000, the grandparents filed the instant motion to modify their visitation. Subsequently the parties agreed that the grandparents could attend or participate in the minor child's school and extracurricular activities. Despite mediation efforts involving all counsel and the family relations office, the parties did not agree on a modification. The hearing on the grandparents' motion began on November 9, 2000 and ended on December 12, 2000. CT Page 2078
On November 9 the parents entered into a stipulation which was amended on December 12. Pursuant to that agreement, Bergamo obtained sole custody of the minor child. The portions of the stipulation relevant to the instant issue provide that the father would visit with, the child every Tuesday from 3:00 p.m. to 7:00 p.m. but that the paternal grandfather would pick her up at school and deliver the child to him. In addition, it provided that, every other Friday when the father did not have the child for the weekend, he would have the child from 3:00 p.m. to 8:00 p.m. but that the grandfather would pick her up at school and deliver her to her father pursuant to the court order of September 20, 1999. This schedule permitted the grandfather to visit with the child for a few hours before the father saw her. It did not provide the grandmother with the same amount of time with the child because of her employment schedule.
II. Jurisdiction
Although the parties did not raise the issue of subject matter jurisdiction at the time the Motion to Intervene was filed, the court addresses the issue now.
In Castagno v. Wholean, 239 Conn. 336, 684 A.2d 1181 (1996) the court considered the issue of a third party's standing to bring a visitation petition. The court concluded that the "legislature intended § 46b-59
to afford the trial court jurisdiction to entertain a petition for visitation only when the minor child's family life has been disrupted in a manner analogous to the situations addressed by §§ 46b-56 and 46b-57. . . . [T]he de facto separation of the parents may allow an action. . . ." Id. 351-352.
The court finds the following facts which are relevant to the issue of jurisdiction.
When Courtney was born, her parents were living together as an unmarried couple. They separated when she was 1 year old. The plaintiff has subsequently married and had a child. Therefore, the parents and Courtney do not form an intact family.
This court finds that the child's life has been disrupted in a manner analogous to the situation addressed in the statutes. Therefore, the court has subject matter jurisdiction of the grandparents' motion.
III. Issues
The grandparents seek to modify visitation so that they can chaperone and offer assistance for Courtney's school activities and trips, enjoy CT Page 2079 their own visitation schedule in addition to time accorded their son, including overnights, have one full week of vacation during the summer months and visitation on certain holiday weekends. They also seek to be the day care provider in the event neither parent is available to care for the child on her days off from school or camp. Bergamo opposes their request for summer vacation; their participation in school activities as she herself participates or chaperones these events; visitation from Sunday noon to 6:00 p.m. on certain Monday holidays; and Mondays and overnight visits in addition to those scheduled for the father. She also does not agree that the grandparents babysit Courtney when she is not in school or camp.
In order to address the motion, the court finds the following additional facts. When the plaintiff and the defendant encountered difficulties in their relationship during Courtney's first year, the elder Denardos babysat Courtney overnight and on weekends to allow the couple time to patch up their differences. Ultimately, the parties separated in July, 1995. Bergamo returned to full-time work. For a few weeks, the grandparents babysat Courtney; thereafter, the Engleharts, Bergamo's long-time friends, cared for the child along with Bergamo's older child, a son from an earlier relationship. Throughout the period before August 1998, Bergamo and the paternal grandparents had cordial relations and the child spent time with them during her father's visitation and sometimes on her own.
Patricia Denardo enrolled Courtney in gymnastics class, swimming class, T-ball, Salvation Army Playtime and took her to the library and other activities. She enrolled the child in gymnastics and T-ball without Bergamo's knowledge. Bergamo made no objection to the particular activities, but wished to have been notified. The elder Denardos also occasionally babysat for Christopher, and they provided financial aid to Bergamo when she was unemployed. They also contributed $50 per week to the Engleharts. The grandparents provided Courtney with her own bedroom at their home despite their not having designated a bedroom for their other grandchildren. They also took Bergamo and her two children to their beach house in the summer. The defendant maintained visitation with his daughter and his parents saw the child while she was with him. He subsequently moved from his parents' home.
The relationship of mother and grandparents soured in August, 1998. As a result of an earlier disclosure by Courtney, Patricia Denardo told Bergamo that Courtney complained that Christopher had touched her inappropriately and hurt her. The child told her grandmother that he had threatened to kill her and their mother with a knife. In response to this disclosure, Bergamo sought counseling for herself and Courtney as part of CT Page 2080 Christopher's ongoing therapy.
Denardo was not satisfied with the steps taken by Bergamo. In August she discussed the situation with her own counselor. As a result, the matter was referred to the Department of Children and Families (DCF). Having not been forewarned of the report to DCF, Bergamo's reaction was one of disbelief. DCF investigated the allegation. The child underwent a physical examination and interviews by the Child Abuse Investigative Team. After its investigation, DCF closed the case taking no further action. The relationship between Bergamo and the grandmother, Patricia Denardo, was unalterably damaged. For a time, Bergamo allowed the grandparents to see Courtney only with supervision. The custody complaint was brought by the child's father shortly after DCF became involved.
In granting visitation to the grandparents pursuant to § 46b-59, the court must be guided by the best interests of the child according to its best judgment subject to such conditions and limitations as it deems equitable. A focal consideration of its analysis is the recognition by the U.S. Supreme Court that ". . . the interest of parents in the care, custody, and control of their children — is perhaps the oldest of the fundamental liberty interests recognized by this court." Troxel v.Granville, 530 U.S. 57, 120 S.Ct 2054, 2060, 1471 L.E.2d 49 (2000).
"[T]here is a presumption that fit parents act in the best interests of their children. . . . the law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions. More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children. . . . Accordingly, so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." (Citation omitted). Internal quotation marks omitted. Id., 2061.
The grandparents do not allege that Bergamo is an unfit parent. They have produced no evidence to rebut the presumption that she does not act in the best interests of the child. The court finds that the grandparents are nurturing and loving grandparents to the child and that the Denardo family is a close, extended family, enjoying frequent occasions to get together. Courtney enjoys her visits with her father, his wife and their infant son.
Nevertheless, the court finds, based, on the credible evidence, that CT Page 2081 the grandparents intruded upon the right of the mother to make decisions for her child. They enrolled the child in activities without Bergamo's knowledge and reported Bergamo to DCF because they were not satisfied with steps she took in connection with Courtney's complaint. In seeking more time with Courtney, Mrs. Denardo has slept over her son's house during his visitation with the child. One week before the hearing, she picked up. Courtney at school before dismissal time to take her to a movie. Patricia Denardo argues that she be allowed to have more visitation with Courtney because "her mother gets more time with her." As a working mother, Bergamo structures her own time with the child around the child's burgeoning schedule of activities. She is able to participate in the child's school activities and chaperone field trips by arrangement with her employer. She and the child's father have adequately provided for the child's care on a continued and consistent basis. Furthermore, giving the grandparents additional visitation especially that sought on the three-day weekends, would interfere with the parents' arrangement regarding these holiday weekends. Courtney's parents agreed that even when Denardo has weekend visitation on a three-day weekend, he returns the child on Sunday so that Bergamo can share her holiday from work with the child.
 ORDERS
The court agrees with the guardian ad litem that it would be in the best interest of the minor child to visit with the grandparents during the summer at their beach house. That visit is to occur between 9:00 a.m. Monday morning and 8:00 p.m. Friday evening in a mutually agreed upon week. The grandparents are to provide transportation and reimburse the mother for mandatory prepayment of daycare or camp, if any, that is not utilized by the child on those days.
The court denies the grandparents' requests as follows:
1. To participate in or to chaperone school activities. However, they may attend a performance or event to which the general public is invited.
2. To care for the child when school or camp is not in session.
3. To have the child on Sunday-Monday visitation at a time which is not scheduled as overnight visitation awarded their son.
SANDRA VILARDI LEHENY CT Page 2082