[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON THE PLAINTIFF'S MOTION TO DISMISS
In this action for dissolution of the marriage brought by the plaintiff Andrew W. Bronson, III against the defendant Rachel L. Bronson, Susan Maloney and Tod Pringel (both hereinafter referred to as "intervenors") seek to intervene by amended motion for the purpose of obtaining visitation with the minor child Jordyn L. Bronson, born July 1, 1997 CT Page 10126 issue of the marriage. Before the court is the plaintiffs motion to dismiss the amended motion to intervene and the intervenors' objection thereto.[1]
This motion to intervene seeking visitation of a minor child over the objection of the parents must be viewed in its constitutional setting. "[C]onsistent with the court's determination that a parent's interest in the care, custody and control over his or her children is `perhaps one of the oldest of the fundamental liberty interests recognized by [the] Court'; Troxel v. Granville. [530 U.S. 57, 65 (2002)]; the application of the strict scrutiny test is required to any infringement it may suffer.Castagno v. Wholean, [239 Conn. 336, 344 (1996)]. (`The right to family autonomy and privacy acknowledged in the common law has been recognized as so fundamental as to merit constitutional protection. Consequently, any legislation affecting it is strictly scrutinized. See Wisconsin v.Yoder, 406 U.S. 205, 220-21, 92 S.Ct. 1526, 32 L.Ed.2d 15 [1972]. . . .' [Citations omitted.]); Keogh v. Bridgeport, 187 Conn. 53, 66, 444 A.2d 225
(1982) (`[w]hen a statutory classification . . . affects a fundamental personal right, the statute is subject to strict scrutiny and is justified only by a compelling state interest'"). Roth v. Weston, 259 Conn. 202,218 (2002).
The majority of the court in Castagno v. Wholean, supra 239 Conn. 336
construed General Statutes § 46b-59, the visitation statute, in an attempt to save this broad statute from being declared unconstitutional. The court in Castagno held that maternal grandparents could be granted visitation rights absent the consent of the natural parents, only in those instances "in which the family already has been somehow disrupted warranting the state's intrusion upon the integrity of the family unit. . . ." Id. 351-2. The concurring opinion of McDonald, J. joined by Berdon, J. pointed out that this overly broad statute providing for visitation of minor child for "any person" makes the statute "facially unconstitutional" and not subject to repair as the majority attempted to do. Id. 353.
The Supreme Court of Connecticut in Roth v. Weston, supra 259 Conn. 202
realized that under Troxel v. Gamville, 530 U.S. 57 (2000) General Statutes § 46-59, even as interpreted by Castagno, would not pass constitutional muster and decided to again judicially rewrite this legislation by placing further judicial gloss on the statute.[2] This court applies the judicial rewritten § 46-59 for several reasons: 1) under the rewritten § 46-59 the Roth court has come up with the correct language and if it had been written by the legislature would pass constitutional muster; 2) this trial court is bound by the holdings of the Supreme Court of Connecticut, and 3) the plaintiff and the defendant do not challenge Roth. CT Page 10127
Under Roth, for the court to have jurisdiction to entertain a petition for intervention to obtain visitation over the objection of a fit parent, "the petition must contain specific, good faith allegations that the petitioner has a relationship with the child that is similar in nature to a parent-child relationship. The petition must also contain specific, good faith allegations that denial of the visitation will cause real and significant harm to the child. As [the court has] stated, that degree of harm requires more than a determination that visitation would be in the child's best interest. It must be a degree of harm analogous to the kind of harm contemplated by §§ 46b-120 and 46b-129, namely, that the child is `neglected, uncared-for or dependent.' The degree of specificity of the allegations must be sufficient to justify requiring the fit parent to subject his or her parental judgment to unwanted litigation. Only if these specific, good faith allegations are made will a court have jurisdiction over the petition." Id. 234-35.
The pertinent allegations in the intervenors' amended motion for visitation are as follows: "The intervenors . . . were from January 1998 to December 27, 2000, the primary caregivers to the minor child Jordyn L. Bronson. In as much as Jordyn L. Bronson was born on July 1, 1997, she was in their primary care from the age of five months to three and half years. The minor child came into the care of the intervenors due to the reports of [plaintiff] that she was getting out of an abusive marriage. In November of 1999, . . . [plaintiff] began a relationship with one Timothy Murray of Meriden, Connecticut, which, by the reports of . . . [the plaintiff], was also abusive, with some of those abusive events witnessed by the minor child, Jordyn. On December 27, 2000, the minor child, who lived with and received care from the intervenors, was abruptly and without warning placed by . . . [the plaintiff] in a day care facility, rather than with the intervenors, who had provided stable adult care in a mutually loving relationship. Prior to seeking any court intervention, the intervenors tried to speak with . . . [the plaintiff] in the hope of alleviating emotional trauma that the intervenors reasonably believe was suffered by the minor child in the sudden removal of the two persons that had given her primary care and comfort in her young life. The intervenors therefore, have applied to this court to obtain an order permitting their visitation with the minor child on a periodic basis. The intervenors were psychological parents to the minor child for all of that minor child's functional memory, and as a result she has suffered and will suffer continuing severe emotional trauma in the sudden removal of the child from their cares especially in the absence of any other periodic contact, and that such emotional trauma is a real, actual and significant harm to the child that can only be remedied by the requested visitation. Upon information and belief, . . . [the plaintiff] had placed the minor child in the full time care of CT Page 10128 non-family members, except at certain night or week-end hours, when the minor child had known a family relationship with the intervenors, so as to cause emotional and psychological trauma, especially in the absence of any other periodic contact with the intervenors. In September, 2000, the minor child reported to the intervenors that she had been . . . touched in an improper way while staying over night at . . . [the defendant's] house, by someone other than [the defendant] . . . offered the name "Tina" as the one doing this touching. The intervenors immediately advised . . . [the plaintiff]. . . . [The plaintiff] indicated that she would have Jordyn see a child psychologist. The intervenors believe that this has never occurred, and that Jordyn may therefore continue to be exposed to inappropriate touching, and the resulting emotional and physical harm. The intervenors have a reasonable belief that the minor child is being exposed to person or persons likely to display abusive behavior toward [the defendant] or to the minor child. These were regular occurrences while the minor child was in the primary care of the intervenors, and the minor child sought and received the intimate emotional support she required as a result of those incidents from the intervenors, but which the intervenors believe that the minor child no longer receives from her current care-givers. Based upon all of the foregoing, the minor child has suffered and is suffering real, actual and significant harm through the forced physical and emotional separation of her established primary care relationship with the intervenors who are, by virtue of their prior care and the tender age of the minor child, her psychological parents or person in a parent-like relationship with the child, as well as by virtue of probable exposure to abusive behavior and possible illegal physical touching by those to whom Jordyn is exposed or entrusted for care.
The foregoing allegations, which are very specific, meeting the test of Roth entitling the intervenors to an evidentiary hearing. The court concludes that proof of the allegation would satisfy the requirement of a finding of real and substantial harm to the child if visitation is not allowed. Roth, 259 Conn. at 229.[3]
The plaintiffs motion to dismiss the motion to intervene for visitation is denied.
Berdon, Judge Trial Referee