[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT, BARRY THOMASEN'S,MOTION TO DISMISS
This is an action for visitation rights brought pursuant to General Statutes § 46b-59 by Lena G. Matthews and Michelle K. Matthews, the maternal grandmother and maternal aunt of a nine-year-old girl against her parents, Barry Thomasen and Melissa Matthews. The defendant Thomasen has moved to dismiss this action on two grounds: (1) res judicata, (as to the aunt, Michelle Matthews only), relying on the recent dismissal of the aunt's petition for removal of guardian by the Superior Court for Juvenile Matters; and (2) lack of subject matter jurisdiction as to both plaintiffs on the basis of the Connecticut Supreme Court's ruling in Castagno v. Wholean, 239 Conn. 336,684 A.2d 1181 (1996).
The pertinent facts alleged in support of the motion to dismiss are largely undisputed. On April 26, 1988, Melissa Matthews gave birth to a minor child, Shana M. Thomasen. The mother and father lived together after Shana's birth, but eventually separated in the spring of 1993. Barry Thomasen has had physical custody of Shana since February 24, 1994. On December 11, 1995, he obtained sole legal custody in New Britain Superior Court in the matter of Michelle Matthews v. BarryThomasen, Docket Number FA 89-0434886S.[1] The mother was granted reasonable rights of visitation and also ordered to pay child support to the father. On October 7, 1996, the mother filed a motion to modify the visitation, alleging that the father would not permit her to see Shana. No court action was ever taken on this motion.
On July 22, 1996, plaintiff Michelle Matthews filed an application for removal of guardian and temporary custody against CT Page 9814 Thomasen in Bristol Probate Court. She alleged abandonment and denial of appropriate care and guidance by Thomasen. On September 10, 1996, the removal of guardianship proceeding was transferred to the Superior Court for Juvenile Matters in Plainville. The petition was dismissed with prejudice by that court on October 15, 1996.
The maternal grandmother and maternal aunt allege that Thomasen, as custodial parent, once permitted them reasonable and liberal visitation, but recently terminated all visitation. The child's mother, Melissa Matthews, is presently incarcerated but does not oppose visitation between Shana and her grandmother and aunt.
At oral argument, this court indicated it would not dismiss this action on the basis of res judicata. The doctrine of res judicata, or claim preclusion, provides that a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. Connecticut Natural GasCorporation v. Miller, 239 Conn. 313, 322, 684 A.2d 1173 (1996). However, it is properly plead as a special defense to the allegations in a complaint, and is not grounds for dismissal Practice Book Rule § 143; W. Moller and W. Horton, Conn. Practice — Practice Book Annotated (3rd Ed. 1989) § 64, pp. 246-252; Nikitiuk v. Pishtey, 153 Conn. 545, 553, 219 A.2d 225
(1966). The defendant Thomasen is free to plead and prove res judicata as a special defense to Michelle Matthews' claim.
The second ground for dismissal, lack of jurisdiction over the subject matter, is premised on the claimed applicability ofCastagno v. Wholean, which held that third parties who seek to establish visitation with minor children must first demonstrate disruption of the family sufficient to justify state intervention. In the absence of this threshold requirement, a trial court lacks jurisdiction to decide the issue of visitation by third parties. In Castagno, the Supreme Court ruled, ". . . the legislature intended Section 46b-59 to afford the trial court jurisdiction to entertain a petition for visitation only when the minor child's family life has been disrupted in a manner analogous to the situations addressed by Section 46b-56 and46b-57."[2] Castagno v. Wholean, supra, 239 Conn. 352. The Supreme Court did not state precisely which circumstances are sufficient to invoke the trial court's jurisdiction under § 46b-59. It did suggest that the death of a parent or the de facto separation of the parents may allow an action. Id., 352. CT Page 9815
Unlike Castagno, which involved grandparents filing an action for visitation against parents who were still married and residing together with their children, this court is faced with a "nontraditional" family of two unmarried parents and a child where the parents have separated. Recently in Paraskevas v.Tunick, the trial court, (Dranginis, J.), was faced with a case involving a mother and her former boyfriend. The boyfriend was seeking visitation rights with a child born to the mother during the couple's relationship. The mother had sought a restraining order prohibiting all contact. Although the boyfriend was not the child's biological father, he had a close relationship with the child he sought to preserve. The court noted, "the parties . . . constituted a "nontraditional" family and the separation of the parties is tantamount to a `de facto' separation. Additionally, the obtaining of the restraining order has already invoked the power of the court to intercede in this family and cannot now be said to be meaningless when it comes to invoking the power of the state. Thus, even under Castagno, the plaintiff has standing."Paraskevas v. Tunick, 19 CONN. L. RPTR. No. 2, 39, 47, (May 12, 1997).
Until 1993, the parents in this case also constituted a nontraditional family, and their separation would be tantamount to a "de facto" separation. In addition, Thomasen, in obtaining an order of custody in the Superior Court in 1985, previously invoked the intervention of the state into this family's privacy in a manner analogous to the situations addressed in §§ 46b-57
and 46b-59. For the purpose of meeting the threshold requirement for standing set forth in Castagno, there is little difference between separated, married parents seeking a marital dissolution and unmarried parents seeking orders for custody, support or visitation. Their resort to the courts, in both instances, would constitute the "triggering event" necessary for third parties seeking visitation to establish standing.
"When a non-traditional relationship is dissolving, the child is as likely to become a victim of turmoil and adult hostility as is a child subject to the dissolution of a marriage. In reCustody of H.S.H.-K., 553 N.W.2d 419, 421 (Wis. 1995) cert. denied, 110 S.Ct. 475 (1995)." Paraskevas v. Tunick, supra, 19 CONN. L. RPTR. No. 2, 44. The plaintiffs have alleged facts sufficient to demonstrate the disruption of a nontraditional family which has opened itself to intrusion by the courts.Castagno v. Wholean, supra, 345. These facts are sufficient to CT Page 9816 establish plaintiffs' standing to seek visitation rights pursuant to § 46b-59. The Supreme Court did not intend to limit state intervention in all cases where a child lives with one or both parents, but only refused to allow state intervention in "intact" families.
For the foregoing reasons, the motion to dismiss is denied.
KELLER, J.