[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO DISMISS
The plaintiff, Carolyn Miranda, commenced a legal action against her daughter, the defendant, Heather Miranda, seeking regular and reasonable visitation with her granddaughter, Abby Miranda, born March 9, 1996. The defendant appeared through counsel and filed a motion to dismiss the complaint pursuant to the provisions of Section 10-30 and 10-34 of the Connecticut Practice Book. The defendant contends that the plaintiff has not alleged the threshold requirements which would bring the subject matter of the plaintiff's complaint within the jurisdiction of the court. The defendant further contends that.Connecticut General Statutes § 46b-59, the statute upon which the plaintiff bases her claim, is unconstitutional in relation of the due process clause of the14th Amendment of the United States Constitution.
On November 14, 2000, in response to the defendant's motion to dismiss, the plaintiff filed an amended complaint. The plaintiff alleged further facts concerning the court's jurisdiction to prosecute her motion for grandparent visitation. The parties submitted briefs and oral argument was heard at short calendar. The court requested that the parties submit further evidence so that the court could find facts necessary to determine the jurisdictional issues.
The parties presented testimony and exhibits at a hearing on March 15, 2000. The court has analyzed the evidence and reviewed the memoranda of law and prior arguments of the parties. The court finds that the defendant is the daughter of the plaintiff. The defendant resided with her mother in a duplex owned by the plaintiff in Kensington, Connecticut. The defendant lived on one side of the two-story structure, with the plaintiff residing on the other side of the dwelling with her children. The units contained separate entrances and exits (front and back). Each dwelling was accessible through a closet that was modified as an open access to each unit.
The parties enjoyed a good relationship with each other until the mother gave birth to Abby Miranda on March 9, 1996, out of wedlock. CT Page 5741-hy Problems developed immediately after with the child's father, Shawn Cyr. He was removed from the premises at the request of the defendant and actions by the plaintiff due to his violent and erratic behavior. The biological father continued to visit the baby at her mother's house. After paternity was established, he was ordered to pay child support from his employment income. After repeated requests by the defendant, the biological father voluntarily terminated his parental rights on October 1, 1999.
The defendant continued to reside at the plaintiffs duplex and received state assistance. She paid little if any money to the plaintiff as rent. While attending law school (prior to her dismissal), she paid no rent to her mother. The relationship between the parties deteriorated when the plaintiff commenced a relationship in April 1999 with Jason Angelitte, her future husband. The plaintiff disapproved of defendant's relationship with her live-in boyfriend. She had also previously disapproved of prior relationships of her daughter with members of the opposite sex. The plaintiff refused to meet Jason, which further added to the animus of the parties. After an argument between Jason and the plaintiffs son in October 1999, the plaintiff called the police to have Jason removed. After additional incidents in December, the plaintiff again sought police intervention, claiming that Jason had burglarized her side of the dwelling by gaining entry from an opening between the dwellings that had been recently blocked off by the plaintiff's father.
The court further finds that the plaintiff had a close and loving relationship with her granddaughter until October 1999. The plaintiff was at the delivery assisting the defendant in the birth of her granddaughter. In addition to protecting her daughter and newborn granddaughter against the biological father, the plaintiff gave financial support to the defendant and Abby. She cared for Abby while the defendant was at school and/or away from home. She also met some of the needs of Abby on a regular basis even while the plaintiff was home. She also enrolled Abby in a daycare facility where the plaintiff was employed and provided transportation for the minor child.
After October 1999, the defendant transferred Abby from the plaintiffs daycare facility to a different facility as a result of the breakdown of the relationship of the parties. While disputes were continuing between the plaintiff and Jason, the plaintiff commenced an eviction action against the defendant and Jason by serving a notice to quit, dated November or early December 1999. Abby was transferred to a new daycare facility on December 17, 1997. (Defendant's Exhibit F) CT Page 5741-hz
To make matters worse, after Abby moved to Kinder Care, the plaintiff referred the defendant to Department of Children and Families. On December 20, 1999, the defendant was questioned by two representatives from DCF while Abby was present. The DCF complaint was investigated, and the case closed in February 2, 2000. (Defendant's Exhibits G and H). The parties further stipulated to a judgment of possession with the defendant, Jason and Abby vacating the property on February 9, 2000. (Defendant's Exhibit I).
The court finds that the plaintiff has not had any personal contact with Abby since February 9, 2000. Jason and the defendant were married on February 10, 2000, the very next day after vacation from the plaintiffs duplex. The plaintiff did not attend the wedding. She has had no contact with the defendant and/or Abby with the exception of correspondence submitted into the record. (Plaintiff's Exhibit 1, 2, 3). While Jason lived next door to the plaintiff from September 1995 to February 9, 2000; she has had no relationship with him. The defendant has objected to any contact between the plaintiff and Abby since December 17, 1999.
The defendant fears that the plaintiff, by her past actions, is controlling and wants to take Abby from her care. She further contends that the defendant has never accepted Jason as evidenced by the plaintiff's actions. She has refused to develop a relationship with him.
The defendant, Jason and Abby have lived together as a family since their marriage. The plaintiff has had no relationship with her granddaughter as a result of the unfortunate lack of respect and trust between the parties. The defendant, to the total exclusion of the plaintiff, has been the caretaker of Abby, without any physical, financial and/or emotional assistance from the defendant. Abby, according to the parties, is a well-adjusted, happy child, in spite of the conflict between the parties. The actions of the plaintiff involving requests for police intervention and report of alleged neglect and/or abuse by Jason to DCF has polarized the parties.
The court has the duty to conclude from the facts found whether the defendant's motion to dismiss should be granted. In Castagno v. Wholean, the Connecticut Supreme Court held that grandparents or any third party seeking visitation rights under General Statutes § 46b-59 "must demonstrate disruption of the family sufficient to justify state intervention." 239 Conn. 336, 338 (1996). If there is no such disruption, then the court does not have subject matter jurisdiction to decide the issue of visitation. Id.[1] The court noted that sufficient CT Page 5741-ia disruption may be found upon the allegation of "the death of a parent or the de facto separation of the parents." Id., 352. Nevertheless, "there may be other times when an action is also warranted, such as when there has been a good faith allegation by a third party of abuse or neglect. A party seeking visitation rights must, however, in the pleadings, set forth with specificity the factual bases for the petition before the court can determine whether such threshold conditions have been met." Id., 352-53.
Based upon the facts found by the court, the court concludes that Abby is residing in a family unit. She has resided with her mother, the defendant and her stepfather since the parties married and moved into their new residence. The plaintiff has had no personal contact with her grandchild since her move. The plaintiff has refused instituting any relationship with the child's stepfather. The defendant wants to raise her child in a manner she deems appropriate without involvement or input from the plaintiff. The court further concludes there is insufficient disruption of the present family unit to justify state intervention by permitting the plaintiff to pursue an action for visitation.
The present controversy does not involve the death of a parent. Both the plaintiff and defendant concurred in the pursuit of the termination of the parental rights of the biological father. Likewise, there is no defacto separation of the parents. The plaintiff is raising the child in an intact family. While the stepfather has not adopted the child to date, a finalized adoption is not a precondition to the finding of "family." The child for over a year has been raised by her mother and stepfather. Any claim of abuse or neglect by the plaintiff was unsubstantiated with the case closed by DCF on February 2, 2000. (Defendant's Exhibit H).
The court is impressed by the education and experience of the plaintiff concerning the issues surrounding child care and child development. It is evident that the plaintiff is a dedicated and hardworking professional in the field of daycare. Based upon the particular facts of the case, however, the plaintiff has not proven present disruption of the defendant's family unit. The defendant has the right to raise her child with her husband. The due process clause of the Fourteenth Amendment of the federal constitution protects the fundamental rights of parents to make decisions concerning the care, custody and control of their children. Troxel v. Granville, 530 U.S. 57 (2000). The liberty in interest in this case, the interests of a parent in the care, custody and control of her child is one of the oldest of the fundamental interests recognized by the United States Supreme Court, Meyer v. Nebraska,262 U.S. 390, 399, 401; Pierce v. Society of Sisters, 268 U.S. 510, CT Page 5741-ib 534-534 (1925). The parents' liberty includes the right to direct the upbringing and education of the children under their control. To permit the prosecution of the plaintiff's motion, would result in disruption of the existing family unit.
The court is cognizant of trial court decisions where the trial judge granted the motion to dismiss for family intact or newly intact. McClurev. Perkins, SC N2 Docket No. 54854 (July 28, 1999) (25 Conn. L. Rptr. 166);Rispoli v. Rispoli, SCJD New Haven Docket No. 421004 (March 28, 2000) (26 Conn. L. Rptr. 693); Bell v. Zarin, SCJD Litchfield Docket No. 77686 (November 23, 1998). For decisions where the court denied the motion to dismiss, Crockett v. Pastore, SCJD New Haven Docket No. 413926 (September 4, 1998) (23 Conn. L. Rptr. 138); Matthews v. Thomasen, SCJD Hartford/New Britain Docket No. 478796 (August 7, 1997) (20 Conn. L. Rptr. 357);Lasky v. Pivinick, 46 Conn. Sup. 539 (2000). While the newly intact family unit, in the present controversy, has legally existed for only a little over one year, it has existed without disruption since the separation of the parties to this litigation.
The court, after careful consideration of the facts found from the evidence, grants the defendant mother's motion to dismiss the visitation complaint. Based upon the decision to dismiss the complaint pursuant to Supreme Court precedent, the trial court will not address the constitutional issues raised by the defendant.
Devine, J.