[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STAY 
This memorandum is to comply with § 61-14 and § 64-1 of the Practice Book.
On May 14, 2001, after hearing arguments of the attorneys for the parties, the court denied defendant's (father) motion to stay the judgment. The court believes it would be detrimental to the children's best interests to delay visitation to the plaintiff's (the maternal grandmother and aunt) any further. The children are: Ashley Weston (date of birth, October 2, 1995), now age five; and Stan Weston (date of birth, November 25, 1997), now age three. These minor children are the issue of the defendant (father) and Brenda Weston, their mother, who committed suicide on December 3, 1999. The defendant (father) has refused to allow the plaintiff's visitation for the past fourteen months without explanation, except he doesn't like their lifestyle. The children have been deprived of the plaintiffs' love and affection for over 20 percent and 33 percent of their respective lives, and any further delay is not in their best interests. Prior to the mother's suicide, these plaintiffs were in contact, either by telephone or in person, with Brenda Weston and these two children almost on a daily basis without objection by the defendant. In 1998 and 1999, the mother was suffering from a serious clinical depression and their love for these children grew stronger, and to completely cut off this loving relationship after her death with the children is not in their best interests. The mother's suicide was clearly a disruption of the Weston family, and the family is no longer intact.Castagno v. Wholean, 239 Conn. 336 (1996). CT Page 7042
The court reaffirms its findings of fact in pages five, six, and seven of its memorandum of decision of April 23, 2001.
The testimony of Ms. Julie Foster, the court appointed attorney and guardian ad litem for the children, was credible and probative. Her written report, dated March 20, 2001, recommended the court award the plaintiff's immediate, unsupervised visitation. (Emphasis added.) Some relevant parts of her testimony were answers given in response to questions from plaintiff's counsel, Ms. Marino, and the Court, taken from the court transcript of the hearing of March 20, 2001, as follows.
 "Q. And, during the course of the time you got to know my clients, is there any aspect of either of them whatsoever that you find could be potentially harmful to the children?
 "A. No, I have found their activity to be reasonable and to be appropriate with the children, even when I suggested the last time we were in court, that the visitations be every other week, and I explained to them why. They seemed very reasonable with it, that they didn't want to overload Stan, and that they did not want to intrude as much as possible with Stan, and they just seem appropriate at every level.
 "Q. Now, Mr. Weston testified as to a myriad of reasons as to why Donna Campbell should have nothing to do with the children. Do you concur with any of his reasons as to why Donna Campbell should be denied visitation?
 "A. Nothing that I've observed or heard leads me to believe that she should not have unsupervised, immediate visitation with these children.
 "Q. And, what about the fact that four years ago, plus or minus, she was a stripper or was in nude magazines? Does that concern you at all?
 "A. I'd believe — I believe that she's a whole different person. Of course, I didn't know her then, but she I — I believe her to be an upstanding citizen.
"Q. Now, you have also presided — CT Page 7043
 "The Court: You have no concern of the past history involving the pornographic movies and the stripping and clubs and things of that nature.
 "The Witness [Ms. Foster]: No, I believe everybody changes, and I think that she has, and I've seen evidence of the work that she's doing now as a real estate person. I know that to be a difficult occupation. And, the real telling is I've seen her with the kids. I've seen her with the children."
(Tr., pp. 77-78.)
 "The Witness [Ms. Foster]: Yes, and Ashley did ask to stay longer. Little Stan did not, but Ashley said, asked me, "Could we stay — could we please stay longer?"
 "The Court: Do you think they're at risk in any way whatsoever. Are you concerned that these two children are at risk if this Court accepts your testimony?
 "The Witness [Ms. Foster]: Not at all. With — with their mother and grandmother, not at all. I think they could only benefit.
"The Court: You think it will benefit them.
"The Witness [Ms. Foster]: Absolutely."
(Tr., p. 81.)
"Q. What is your recommendation?
 "A. It's immediate, unsupervised visitation with both Donna and Mindy. I just made several suggestions. A dinner meeting from four to seven on every other Wednesday and then, an every-other-weekend visitation.
 "Q. Do you think that the Weston children will be positively influenced if the Court grants the visitation that my clients are seeking?
 "A. I think these children absolutely should get to CT Page 7044 know their grandmother and their aunt. I think it's only a positive asset to the children to know these two people. I've seen it myself, and I just — I just think that if — if we can get by all the hostility, I think it's going to be best for the kids."
(Tr., p. 86.)
 "Q. Attorney Foster, before you got really involved in this case, did you have any preconceived biases either for or against any of the parties in this case?
"A. No, absolutely not.
 "Q. And, is your recommendation based honestly on what you think is best for these children?
"A. Absolutely.
(Tr., p. 99.)
For all of the above reasons, the court concluded that awarding immediate unsupervised visitation with the plaintiffs was in the best interests of these children, therefore, the motion for a stay is denied.
Petroni, J.T.R.