REGINA CROCKETT *v.* NICHOLAS PASTORE
(SC 16481)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.

Argued September 26, 2001—officially released January 29, 2002

*John J. Kelly*, with whom, on the brief, was *John M. Barton III*, for the appellant (defendant).

*Lucy W. Rankin*, with whom was *Elizabeth Gleason*, for the appellee (plaintiff).

*Opinion*

KATZ, J. This appeal concerns the constitutionality of the trial court's application of General Statutes § 46b-59,[1] in awarding visitation rights with the defendant's

---

[1] General Statutes § 46b-59 provides: "Court may grant right of visitation to any person. The Superior Court may grant the right of visitation with respect to any minor child or children to any person, upon an application of such person. Such order shall be according to the court's best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable, provided the grant of such visitation rights shall not be contingent upon any order of financial support by the court. In making, modifying or terminating such an order, the court shall be guided by the best interest of the child, giving consideration to the wishes of such child if he is of sufficient age and capable of forming an intelligent opinion. Visitation rights granted in accordance with this section shall be deemed not to have created parental rights in the person or persons to whom such visitation rights are granted. The grant of such visitation rights shall not prevent any court of competent jurisdiction from thereafter acting upon the custody of such child, the parental rights with respect to such child or the

minor child to the plaintiff, the child's maternal grandmother. The defendant, Nicholas Pastore, appealed from the judgment of the trial court for the plaintiff, Regina Crockett, claiming that in light of the United States Supreme Court's recent decision in *Troxel* v. *Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000), § 46b-59 is unconstitutional as applied to the facts of the present case under the due process clause of the fourteenth amendment to the United States constitution.[2] Tied to this challenge is his claim regarding the threshold issue of jurisdiction. We transferred the appeal to this court, pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). On the basis of the reasoning set forth in our opinion in *Roth* v. *Weston*, 259 Conn. 202, 789 A.2d 431 (2002), also decided today, we conclude that, because the plaintiff failed to allege and establish that she had a parent-like relationship with the child and that the child would suffer real and significant harm if visitation with the plaintiff were denied, the trial court improperly granted the visitation petition in contravention of the defendant's constitutional rights.

The record discloses the following undisputed facts. The defendant is the father and sole custodian of his minor child, born February 18, 1995. The defendant and the child's mother never married one another and never lived together. The mother's parental rights have been terminated.

In June, 1995, when the defendant's child was approximately four months old, the child was committed to

adoption of such child and any such court may include in its decree an order terminating such visitation rights."

[2] The fourteenth amendment to the United States constitution, § 1, provides in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

the department of children and families (department). The department placed the child in a foster home with her half siblings. On December 13, 1995, after receiving the results of a blood test, the defendant signed an acknowledgment of paternity of the child, and thereafter petitioned for visitation with the child. In July, 1997, the defendant was granted unsupervised visitation with the child.

The plaintiff, the child's maternal grandmother, had visited the child throughout the duration of the child's placement in foster care. She currently is licensed through the department as a relative foster placement for the child's half sisters. On October 22, 1997, when the child was approximately two and one-half years old, the defendant was awarded sole custody of her. He has refused to allow the plaintiff to visit with the child since that time.

On June 20, 1998, the plaintiff filed this complaint in the trial court seeking visitation with her grandchild.[3] At trial, the defendant testified that he believed it was in the best interests of his child that the plaintiff be denied visitation based upon the plaintiff's record of arrests, her history of alcohol and drug abuse, and her human immunodeficiency virus (HIV) positive status. The defendant further expressed concern that the child would be exposed to the plaintiff's fiancé, with whom she was living, who also has HIV and a history of drug abuse.

The trial court, *Axelrod, J.*, addressed each of the defendant's objections to visitation in turn. With respect

---

[3] The defendant filed a motion to dismiss the plaintiff's original complaint on the ground that the plaintiff had failed to allege a basis for the court's jurisdiction under § 46b-59 pursuant to the criteria that this court set forth in *Castagno* v. *Wholean*, 239 Conn. 336, 684 A.2d 1181 (1996). The plaintiff objected and the trial court, *Munro, J.*, denied the defendant's motion, citing the prior history of state intervention in the family, and a de facto separation of the defendant and the plaintiff's daughter as evidence that there had been a "disruption of the integrity of the family." See id., 351–52.

to the defendant's concern that the plaintiff's alcohol and drug use would pose a risk to the minor child, the court found that the plaintiff "ha[d] successfully addressed her past substance abuse issues" by maintaining a drug and alcohol free lifestyle since September 15, 1995, when she had entered an in-patient treatment program. The trial court concluded that the plaintiff's ten year history of alcohol and drug use predating September 15, 1995, bore no relationship to what was currently in the best interest of the defendant's minor child. With respect to the defendant's concern about the plaintiff's HIV status, the court found that the plaintiff's health posed no risk to the child based on findings by a family relations counselor in a visitation evaluation prepared at the request of the court that the plaintiff was aware of the necessary medical precautions associated with her condition, that she was currently healthy, and that she had no current medical problems that would impair her ability to care for a child. As further support for its conclusion, the court cited studies indicating that HIV is not spread through close personal contact or through sharing of household functions, as well as case law upholding the rights of HIV-infected children to attend public schools and of HIV-infected parents to visit their children. With respect to the defendant's concern about exposing his child to the plaintiff's fiancé, the court found that the plaintiff's fiancé had a history of drug abuse and violent crime, the specifics of which were not able to be verified at trial due to time constraints. The court concluded that the lack of information about the fiancé's history "cause[d] concern" regarding his involvement with the child.

The trial court next noted that, during a psychological evaluation of the child, the defendant and the plaintiff had expressed their commitment to allowing the child to know both of her parents and to be involved in the lives of her extended family. The court further noted

that, notwithstanding these representations, the defendant had severed visitation between his child and the plaintiff. After considering these facts and testimony, the court concluded that the plaintiff had established under § 46b-59 that, despite the defendant's objections, it was presently in the child's best interests for the plaintiff to have visitation with the child. Accordingly, the court rendered judgment on November 2, 1999, ordering visitation between the plaintiff and the child at the plaintiff's residence on the third Saturday of each month from 10 a.m. to 4 p.m. The order additionally required that the plaintiff not allow her fiancé to be present during visitation.

On November 17, 1999, the defendant filed an appeal from the judgment of the trial court. While his appeal was pending, the defendant filed a motion to vacate the trial court's order, on the ground that the United States Supreme Court's decision in *Troxel* v. *Granville*, supra, 530 U.S. 57, issued subsequent to the visitation order in this case, rendered § 46b-59 unconstitutional as applied. On September 5, 2000, the trial court, *Robaina, J.*, denied the defendant's motion to vacate. Thereafter, the defendant amended his appeal to include the trial court's denial of his motion to vacate the visitation order.

The dispositive issue on appeal is whether, in light of *Troxel*, § 46b-59 is unconstitutional as applied to the facts of the present case. Specifically, the defendant claims that, despite the judicial gloss that this court placed on § 46b-59 in its decision in *Castagno* v. *Wholean*, 239 Conn. 336, 684 A.2d 1181 (1996), the trial court's application of that statute failed to provide the defendant with the constitutionally required presumption, articulated in *Troxel*, that a fit parent's decision regarding visitation is in the best interests of his or her child. See *Troxel* v. *Granville*, supra, 530 U.S. 68–69.

This case is controlled by our concurrent decision in *Roth*, wherein we overruled our previous decision in *Castagno*; *Roth* v. *Weston*, supra, 259 Conn. 217; and concluded that the trial court lacks jurisdiction to consider a petition for visitation pursuant to § 46b-59 over the objections of a fit parent in the absence of allegations and proof that: (1) the petitioner had a parent-like relationship with the child; and (2) the child would suffer real and significant harm if deprived of visitation with the petitioner. Id., 234–35. In the present case, we conclude that the plaintiff failed to meet the jurisdictional requirements pursuant to § 46b-59 as set forth in *Roth*, and accordingly, we reverse the judgment of the trial court.

In *Roth*, we relied on the well established principle that "parents' interest in the care, custody and control of their children . . . [is] 'perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court.' *Troxel* v. *Granville*, supra, 530 U.S. 65." *Roth* v. *Weston*, supra, 259 Conn. 216. We concluded that, consistent with the recognition of this fundamental right, "the application of the strict scrutiny test is required to any infringement it may suffer. *Castagno* v. *Wholean*, supra, 239 Conn. 344 ('The right to family autonomy and privacy acknowledged in the common law has been recognized as so fundamental as to merit constitutional protection. Consequently, any legislation affecting it is strictly scrutinized. See *Wisconsin* v. *Yoder*, 406 U.S. 205, 220–21, 92 S. Ct. 1526, 32 L. Ed. 2d 15 [1972] . . . .' [Citations omitted.]); *Keogh* v. *Bridgeport*, 187 Conn. 53, 66, 444 A.2d 225 (1982) ('[w]hen a statutory classification . . . affects a fundamental personal right, the statute is subject to strict scrutiny and is justified only by a compelling state interest')." *Roth* v. *Weston*, supra, 218. We also relied upon the United States Supreme Court's decision in *Troxel*, which instructs the courts that " 'so long as a parent

adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.' [*Troxel* v. *Granville*, supra], 68–69." *Roth* v. *Weston*, supra, 216. We recognized, however, that a parent's right to make decisions regarding his or her child was not without limits, citing the state's role as parens patrie as well as the state's interest in protecting a child where allegations of abuse, neglect or abandonment have been made. Id., 224. We concluded that, consistent with *Troxel* and substantive due process jurisprudence, § 46b-59 must be narrowly tailored to provide sufficient safeguards against unwarranted intrusions into a parent's authority and requires a similarly compelling interest that justifies state interference with a fit parent's decision regarding third party visitation. Id., 219.

Therefore, in *Roth*, we brought these principles to bear, applying a judicial gloss to § 46b-59. We concluded that a trial court is without jurisdiction to consider a petition for visitation pursuant to that statute in the absence of specific, good faith allegations that: (1) the petitioner was someone with whom the child had a parent-like relationship; and (2) the child would suffer real and significant harm if deprived of the visitation. Id., 235. Specifically, the degree of harm must be "analogous to the kind of harm contemplated by [General Statutes] §§ 46b-120 and 46b-129, namely, that the child is 'neglected, uncared-for or dependent.' " Id., 235. We further determined that once these high jurisdictional hurdles have been overcome, the plaintiff must prove these allegations by clear and convincing evidence. Id., 235. We also noted that in making this determination, the trial court's application of § 46b-59 must be consonant with that statute's implicit recognition of a rebutta-

ble presumption that parent-opposed visitation is not in the child's best interests. Id., 234.

Because the plaintiff could not have anticipated these newly stated requirements, we recognize that it would be manifestly unfair to adhere to the usual practice of limiting our jurisdictional inquiry to the allegations in the plaintiff's complaint. We therefore extend our review to the proof in the record. We begin by examining the plaintiff's complaint to assess whether the jurisdictional prerequisites of allegations of a parent-like relationship and significant harm were satisfied. The plaintiff's complaint merely alleged that the plaintiff is the child's maternal grandmother, and that she maintained regular visits and a loving relationship with the child from the time of the child's birth, in February, 1995, through the time of the child's commitment to the department, eight months prior to the commencement of the present action in June, 1998. The record further indicates that these regular visits occurred twice every week for three hours at the plaintiff's home. In addition, the plaintiff testified that she telephoned the child daily throughout the child's commitment to the department, to ask how the child was doing, to say prayers, to say good night, and to sing songs.

This relationship, however, fails to satisfy the standard we have articulated in *Roth*. As we explained therein, it is the nature of the relationship, not the nomenclature, that satisfies the constitutional mandate. Id., 221. Therefore, the plaintiff in the present case was required to plead and prove that her relationship with the child was such that she acted in a parental type of capacity for an extended period of time. See id., 236–37. There is no evidence in the record that the plaintiff assumed and performed such a role. Therefore, the plaintiff failed to satisfy the first jurisdictional requirement.

Moreover, the plaintiff did not allege that the defendant was an unfit parent.[4] *Troxel* requires the court, therefore, to presume that the defendant's opposition to visitation was in the best interests of the child. *Troxel* v. *Granville*, supra, 530 U.S. 68. Accordingly, it was the *plaintiff's* burden to overcome this presumption by alleging and demonstrating that without visitation the child would suffer real and significant harm. The record illustrates, however, that the trial court placed the burden on the *defendant* to *disprove* the plaintiff's allegation that visitation was in the child's best interests.[5] This allocation of burdens of proof is evidenced by the trial court's concentration on the defendant's reasons for opposing visitation and its ultimate conclusion that each "does not affect what is in the interests of the minor child insofar as the plaintiff having visitation with the minor child." Thus, the trial court improperly questioned the presumed ability of the defendant to make the best decisions concerning the upbringing of his child, and failed to provide any protection for the defendant's constitutional right to make those decisions.

Finally, it is clear that the plaintiff failed to allege that the child would suffer real and significant harm if the trial court were to deny visitation. The plaintiff merely alleged that it was in the child's best interests to *continue* visitation. She did not allege that the *absence* of visitation would cause real and significant

---

[4] To the contrary, the record supports the conclusion that the defendant was a fit parent. Rob Lang, a family relations counselor, testified that the defendant was "an appropriate custodial parent." Lang stated that he had observed the defendant's home to be "very nurturing" and that the defendant's child "seemed very comfortable there." He further testified that the defendant and his child were "very comfortable with each other" and that they had "bonded."

[5] In *Roth*, however, we determined that the best interest of the child was not a sufficiently compelling interest to warrant the state's intrusion into a fit parent's decision regarding visitation. *Roth* v. *Weston*, supra, 259 Conn. 226.

harm to the child. See *Roth* v. *Weston,* supra, 259 Conn. 235. Furthermore, the trial court made no findings with respect to whether the child would be harmed if visitation were denied. Indeed, the only reference to harm we can glean from the record is contained in a psychological evaluation of the child and her two half siblings, in which the examining psychologists noted the importance of the child's ability to maintain bonds with her siblings.[6] These allegations and evidence fall far short of the standard we articulated in *Roth.* See id., 226 (explaining that allegation of emotional harm would suffice if it "is akin to the level of harm that would allow the state to assume custody under General Statutes §§ 46b-120 and 46b-129—namely, that the child is 'neglected, uncared-for or dependent' as those terms have been defined"). Therefore, the trial court improperly granted the plaintiff's complaint seeking visitation in the absence of proof by clear and convincing evidence of significant harm if visitation with the plaintiff were denied.

Because the plaintiff failed to meet the requirements under § 46b-59 that she allege and prove that she has a parent-like relationship with the child and that the trial court's failure to grant visitation to her would cause the child to suffer serious, real and significant harm, we conclude that the trial court did not have jurisdiction over the plaintiff's petition for visitation.

The judgment is reversed and the case is remanded with direction to dismiss the petition.

In this opinion the other justices concurred.

---

[6] We note that the plaintiff brought this action solely on her own behalf, and not on behalf of the child's half sisters, who currently live with the plaintiff. We need not, therefore, reach the issue of whether the child suffered significant harm as a result of having no visitation with her siblings. See *Bortner* v. *Woodbridge,* 250 Conn. 241, 251 n.13, 736 A.2d 104 (1999).