[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: Plaintiff's Motions to Dismiss and Strike (#'s 234 and 244)
This decision addresses the plaintiffs motions to dismiss and strike the defendants' amended post-judgment motion to modify custody. The marriage of the plaintiff, Donanova Foster, and the defendant, Timothy Foster, Jr., was dissolved on January 21, 1992, in South Kingston, Rhode Island.[1] The dissolution judgment granted sole custody of the parties' minor child, Ashley Foster, who was born on August 28, 1990, to the plaintiff. The gravamen of the plaintiffs motions here is that this court lacks jurisdiction to adjudicate the claims for visitation or change of custody filed by the co-defendants[2] Timothy Foster, Sr., and Gail Foster who are Ashley's paternal grandparents. For the following reasons, those motions are denied.
 I. FACTS
This court will not repeat the tortured history of this case in great detail for the purpose of deciding the plaintiffs motion to dismiss and motion to strike, both of which were filed on the regional family trial docket in Middletown on April 9, 2002 and May 13, 2002, respectively.[3]
The Rhode Island dissolution judgment denied visitation to the defendant unless or until he filed for visitation because he did not appear in the dissolution action. Subsequently, however, the Rhode Island court entered a consent decree, vacating the dissolution orders regarding custody and visitation but confirming the dissolution of the "bonds of matrimony only." (Consent Decree.) The consent decree was by agreement of all parties. In the consent decree, the defendant father was granted reasonable rights of visitation on the condition that visitation would be supervised by the codefendant, Gail Foster, the defendant's mother. In addition, Ashley's paternal grandparents, Gail Foster and Timothy Foster, Sr., who reside in New Jersey, joined in the Rhode Island action, and were granted reasonable rights of visitation to take place on scheduled days, at scheduled times and places (either Rhode island or New Jersey). The defendant father was also ordered to pay $90 per week in child support, an order later suspended.
After a four-day hearing on motions by the defendants to enforce the orders of visitation from the Rhode Island, the court, Foley, J., on February 14, 2001, found the plaintiff in contempt for not complying with those orders. The court ordered visitation on various dates thereafter and further review of this case in seven months. The defendants allege CT Page 10462 that no such visitation occurred. They now seek custody of Ashley claiming that the plaintiff is destroying Ashley's psychological and emotional well being. In a nutshell, the defendants seek modification of custody and/or visitation claiming that the plaintiff is an unfit parent. (Amended motion to modify, count one, ¶ 12 and count two, ¶ 12.) The defendants have filed numerous motions to modify custody and/or visitation, all of which have been subject to either a motion to strike, motion to dismiss or both.
 II. ISSUES PRESENTED
1. Motion to Dismiss
The plaintiff moves to dismiss the present action on the grounds that the defendants lack standing and/or the court lacks subject matter jurisdiction. "A motion to dismiss shall be used to assert lack of jurisdiction over the subject matter, "essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court.'" Kizis v. Morse Diesel International,Inc., 260 Conn. 46, 51, 794 A.2d 498 (2002), quoting Gurliacci v. Mayer,218 Conn. 531, 544, 590 A.2d 914 (1991). "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it." Amodio v. Amodio, 247 Conn. 724, 727,724 A.2d 1084 (1999). "It is axiomatic that a party must have standing to assert a claim in order for the court to have jurisdiction." Ganim v.Smith Wesson Corp., 258 Conn. 313, 346-47, 780 A.2d 98 (2001).
 Standing focuses on whether a party is the proper party to request adjudication of the issues, rather than on the substantive rights of the aggrieved parties. . . . It is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy.
(Citations omitted; internal quotation marks omitted.) Id. at 347. "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause." (Citations omitted; internal quotation marks omitted.) Roth v. Weston, supra, 259 Conn. 219.
"[I]n ruling upon whether a complaint survives a motion to dismiss, a CT Page 10463 court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. (Internal quotation marks omitted.) Lawrence Brunoli, Inc. v. Branford, 247 Conn. 407, 410-11,722 A.2d 271 (1999). "The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . Where, however . . . the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." (Citation omitted; internal quotation marks omitted.) Barde Board ofTrustees, 207 Conn. 59, 62, 539 A.2d 1000 (1988); Shay v. Rossi,253 Conn. 134, 140, 749 A.2d 1147 (2000).
The plaintiffs motion to dismiss relies upon the recent decision inRoth v. Weston, 259 Conn. 202, 789 A.2d 431 (2002), where the Connecticut Supreme Court held that in view of the fundamental constitutional right of parents to the "care, custody and control of their children"; Id. at 216; non-parents seeking court-ordered visitation against the wishes of a fit custodial parent must allege and prove a relationship with the child similar in nature to a parent-child relationship and that denial of visitation will cause real and significant harm to the child. The defendants, on the other hand, argue that the court has subject matter jurisdiction because the plaintiff is not a fit parent, and that the fundamental right of a parent to raise his or her child applies if, and only if, the parent is a fit parent. The defendants also argue that Rothv. Weston is inapplicable in the present case for the following reasons: they have already been granted visitation; a parent's fundamental right to raise his or her child as that parent sees fit does not apply to General Statutes § 46b-57; and, even if Roth v. Weston does apply, it is prospective not retrospective in application. Additionally the defendants argue that the oral decision of Judge Devine dated October 18, 2001, addressed the issue of subject matter jurisdiction, and Judge Devine found the that the court has jurisdiction and thus, the doctrine of collateral estoppel bars the plaintiffs motion to dismiss.
The plaintiff here relies on the holding in Roth that "any third party, including a grandparent or a great-grandparent, seeking visitation [under General Statutes § 456b-59] must allege and establish a parent-like relationship as a jurisdictional threshold in order both to pass constitutional muster and to be consistent with the legislative intent." The court concurs with the plaintiff that the constitutional protection afforded by Roth v. Weston to a parent-child relationship applies equally to custody actions under General Statutes §§ 46b-56 and46b-57. A close reading of Roth v. Weston shows that the Supreme Court considered the possibility that finding General Statutes § 46b-59
CT Page 10464 unconstitutional on its face would lead to problems interpreting §§46b-56 and 46b-57 because the same issues might arise under those statutes as well. See Roth v. Weston, supra, 233. The court thus agrees with the plaintiff regarding the interrelationship of the statutory scheme of these three statutes and would apply the Roth standard under General Statutes §§ 46b-56 and 46b-57 whether a non-parent seeks visitation or custody.
What the plaintiff fails to point out in the present case, however, is that the underpinning of both Roth v. Weston and its precursor in the United States Supreme Court, Troxel v. Granville, 530 U.S. 57 (2000), was the presumption of parental fitness:
 We conclude that the statute is unconstitutional as applied to the extent that the trial court, pursuant to the statute, permitted third party visitation contrary to the desires of a fit parent and in the absence of any allegation and proof by clear and convincing evidence that the children would suffer actual, significant harm if deprived of the visitation.
Roth v. Weston, supra, 259 Conn. 205-206.
 Accordingly, so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.
Troxel v. Granville, supra, 530 U.S. 68-69. The courts have long sanctioned intrusions on a parent's fundamental rights of care and custody of their children upon sufficient demonstration overriding that presumption.[4]
In the present case, the paternal grandparents and father of Ashley have alleged that the plaintiff is unfit, is causing the child to suffer psychologically, and is causing her to suffer severe emotional distress. The defendants thus claim that they are not subject to the constitutional hurdles established in Roth v. Weston. The court agrees with the defendants and finds this conclusion further supported by the Roth court's finding that "the only level of emotional harm that could justify court intervention is one that is akin to the level of harm that would allow the state to assume custody under General Statutes §§ 46b-120
CT Page 10465 and 46b-129 — namely, that the child is "neglected, uncared-for or dependent' as those terms have been defined." Id. at 226.[5]
There has long been pending in this court, and Rhode Island courts, legal actions brought by all the defendants to obtain visitation with Ashley. It is clear from the pleadings and motions before the court that the defendants' request for custody arises out of their claim that the plaintiff has not complied with previous court orders granting visitation to the defendant father and codefendant paternal grandparents. Thus, the holding of Greco v. Greco, Superior Court, judicial district of New Haven, docket number FA01-0448175 (Alander, J., May 30, 2001), where the court concluded that non-parent third parties do not have standing to initiate Superior Court actions against a parent seeking custody of a minor child, is not applicable here. The court in Greco held that the general statutes only permit such third parties to intervene in pending actions, not initiate separate proceedings. In the present case, the father claims that the plaintiff has violated prior court orders granting him supervised visitation and seeks a transfer of custody, either to himself or the paternal grandparents, in order to effectuate his ability to visit with his child.
This case is thus different from Collins v. Dec, Superior Court, judicial district of New London, docket number FA01-0557585 (Robaina, J., May 18, 2001), where the court concluded that a father had filed an action for custody "solely to provide a basis for [the maternal grandmother] to present a motion to intervene." In that case, the father requested joint custody and visitation but neither sought physical custody nor claimed he had been denied access to the child by the mother. As the court wrote, "[b]y his own admission, [the father] seeks essentially what he has." The court thus found that there was no real custody controversy pending between the parents and concluded that the general statutes do not give non-parent third parties independent direct access to initiate custody actions. In the present case, the pleadings establish a good faith basis for concluding that the defendant father seeks to enforce previous court orders granting him visitation by obtaining a transfer of custody.
2. Motion to Strike
"The motion to strike . . . replaced the demurrer in our practice. Its function, like that which the demurrer served, is to test the legal sufficiency of a pleading." (Internal quotation marks omitted.) RKConstructors, Inc. v. Fusco Corp., 231 Conn. 381, 384, 650 A.2d 153
(1994). "The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) CT Page 10466Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). The role of the trial court in ruling on a motion to strike is "to examine the [pleading], construed in favor of the [pleading party], to determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) Dodd v.Middlesex Mutual Assurance Co., 242 Conn. 375, 378, 698 A.2d 859 (1997).
The plaintiff moves to strike the amended motion for custody on the ground that the defendants fail to state a legally sufficient claim upon which relief may be granted. Practice Book § 25-16 provides in pertinent part: "(a) Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint or cross complaint, or of any one or more counts thereof, to state a claim upon which relief can be granted, or (2) the legal sufficiency of any claim for relief in any such complaint or cross complaint. . . . that party may do so by filing a motion to strike the contested pleading or part thereof."
The plaintiff argues that the amended motion to modify custody should be stricken because (1) it does not allege a substantial change in circumstances; (2) is not in compliance with Practice Book § 25-26
(e);[6] and (3) the case referred in the motion to modify, Savage v.Savage, 25 Conn. App. 693, 596 A.2d 23 (1991), is named without citation and is not remotely related to the present case.[7]
The plaintiff sets forth her argument in two prongs. The first prong is that the motion is devoid of any factual allegations that would support a change of custody and the second prong is that the allegations of the pleading do not rise to the level of specificity required by the Supreme Court as set forth in Roth v. Weston, supra, 259 Conn. 202, and Crockettv. Pastore, supra, 259 Conn. 240, where a third party seeks visitation with a child.
The court agrees with the defendants that their allegations are sufficient despite the lack of the nomenclature "substantial change in circumstances." "It is fundamental that in determining the sufficiency of a [pleading] challenged by a [party's] motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." Gazo v. Stamford, 255 Conn. 245, 260, 765 A.2d 505 (2001). At the inception of this case in Rhode Island, the plaintiff agreed to visitation by both the father and the paternal grandparents. (See June 13, 1996 Consent Decree.) The defendants allege that the plaintiff has neither complied with that consent decree nor orders subsequently entered in Connecticut; if proven, these allegations would sufficiently demonstrate that there has been a substantial change in circumstance. Moreover, the defendants' motions all arise in the context of Judge Foley's order of February 14, 2001, scheduling this case for review seven CT Page 10467 months later.
The court has already addressed above the plaintiffs second argument, that a third party seeking visitation pursuant to General Statutes §46b-59 must allege and prove (1) a parent-child relationship exists; and (2) the child will suffer real and substantial harm if visitation is denied. The pleading at issue in the present case alleges that the plaintiff is an unfit parent, and the standards set forth in both Roth andCrockett apply only when parental fitness is not an issue.
As to the second count, the defendant father's motion for either custody or visitation does not raise the constitutional issues that arise when a third party seeks visitation or custody. This conclusion is not at odds with Judge Foley's decision that the father's employment as a truck driver would hinder his ability to care for his child because he is on the road for three weeks out of any given month and off one week out of that month. This decision addresses only the sufficiency of the pleadings and not the outcome of the case.
 III. CONCLUSION
The dispositive factor in resolving the two motions here is that the pleadings raise a facially valid claim by defendant father seeking to enforce his court-ordered right to supervised visitation of his minor child. The amended motion to modify custody alleges that the defendant father
 intended to visit with the child in the presence of his parents . . . and to date has had almost no contact with his daughter since she was very young, as the plaintiff mother has intentionally interfered with his relationship with the minor child Ashley.
Troxel, Roth, and Crockett pose no constitutional impediment to a court ordering one parent to provide the other parent with access to their minor child. None of those cases identify any constitutional basis for limiting a court's ability to prescribe where or how such visitation should occur. "When, as here, a court has ordered supervised visitation, this court can thus find no constitutional barrier to a court prescribing that non-parent third parties, such as the grandparents here, provide such supervision.
Although the plaintiffs motions rely on her fundamental constitutional rights as a parent, the defendant father claims in the second count of the amended motion to modify that a transfer of custody is necessary in order to protect his own parental rights: CT Page 10468
 It is the contention of the defendant father that should custody not be awarded to either he, the paternal grandparents or jointly to the defendants that he will never have a meaningful relationship with his daughter due to the inappropriate conduct of the plaintiff mother. . . .
(Amended motion to modify, count two ¶ 19.) The plaintiff has asserted no constitutional basis, nor is the court aware of any, for limiting a court's ability to decide custody issues between parents. The defendant father here claims that the plaintiff mother is an unfit parent, but acknowledges that courts have previously allowed him only supervised contact with their daughter. Should his allegation of the plaintiffs unfitness be proven, but the court continues to allow him only supervised visitation, the court can find no constitutional constraint against awarding custody to a third party pursuant to general statutes § 46b-57.
The claims of the paternal grandparent codefendants, on the other hand, stand on shakier ground and survive solely because it appears, from the pleadings, that the father is also seeking to vindicate his own rights. The existence of a legitimate custody controversy between mother and father allows the paternal grandparents to remain in this action to seek custody. If his claims prove to have no bona fides, as the plaintiff asserts in her briefs, the grandparents' request for custody may belong elsewhere. See Greco v. Greco, supra.
As for visitation, the codefendants allege no parent-like relationship with the minor child, as would be necessary for them to obtain court-ordered visitation against the wishes of a fit custodial parent. Despite the existence of prior court orders granting them visitation rights, the well-reasoned opinion of Judge Resha in Buchalter v.Buchalter, Superior Court, judicial district of New Britain, docket number FA99-0493218S (February 8, 2002) suggests that Roth overrides prior court orders granting visitation rights to non-parent third parties against the wishes of a fit custodial parent; the plaintiff has, moreover, moved to modify those orders in accordance with Roth. Even a showing that the plaintiff mother is an unfit parent will not necessarily result in an order that the codefendants obtain visitation of the minor child, as the court would, upon a finding of unfitness, first have to determine custody.
Based on the pleadings, therefore, the court has jurisdiction to consider the claims raised by all defendants. For the foregoing reasons, the plaintiffs motions to dismiss and strike are denied. CT Page 10469
SO ORDERED.
BY THE COURT,
 STEPHEN F. FRAZZINI JUDGE OF THE SUPERIOR COURT