[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter began as a complaint for visitation by two grandparents, Susan Pivnick and Barry Pivnick seeking visitation of their maternal grandchildren Amanda Lasky and Alec Lasky. The matter was originally filed in court on January 14, 1999. The allegations of the complaint for visitation were that the minor children were born to Mitchell Lasky and Randy Lasky. Randy Lasky, the daughter of the plaintiffs, died on January 23, 1996.
On or about February 24, 1999, there was an agreement entered into between the parties which referred the matter to family relations. That agreement also allowed visitation between the maternal grandparents and the minor children. The agreement was entered and approved as an order of the court. On several dates thereafter in 1999, further agreements providing for scheduled visits were entered as orders of the court.
On or about March 22, 2000, a petition was brought in the Fairfield judicial district by Mitchell Lasky and Iris Lasky seeking to terminate the visitation rights by the "former grandparents." That petition (Docket No. 724898) alleged that Iris Lasky was now the spouse of Mitchell Lasky and that she had adopted the two minor children on December 22, 1999. The argument presented was that the family was now "intact," and that its status as a "disrupted" family had changed when the children were adopted by the father's new spouse. The petition further argued that the court did not have jurisdiction over these issues in light of the Supreme Court decision of Castagno v. Wholean, 239 Conn. 336, 684 A.2d 1181 (1996).
The court (Cutsumpas, J.) issued a decision based upon the standard articulated in Castagno that the party seeking visitation "must demonstrate disruption of the family sufficient to justify state intervention." Castagno v. Wholean, supra, 239 Conn. 338. Accordingly, the court did not terminate the pending visitation rights and transferred the matter to the judicial district of Hartford/New Britain for disposition of the matter on the merits. The decision of the court was CT Page 4356 dated May 25, 2000 [27 Conn.L.Rptr. 279].
Within several weeks of that decision, the United States Supreme Court decided the matter of Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054,147 L.Ed.2d 49 (2000). A motion to reargue was filed by the father and adoptive mother of the minor children based upon that decision. The motion to reargue was granted, and the court decided that the holding ofCastagno was not affected in the manner urged by the parents [27 Conn.L.Rptr. 568].
Subsequent to that case being transferred to Hartford, the separate history of the files becomes somewhat blurred. While both files contain parallel orders, and in some cases parallel motions, the files do not appear to have been consolidated. There was a motion to dismiss presented in file No. 724898 which was dated February 15, 2002. File No. 724898 was dismissed on May 2, 2002, without a ruling on the merits of the pending motion to dismiss.
The matter presently before the court is the defendant's motion to dismiss which was filed on December 2, 2002. That motion argues a lack of jurisdiction based upon the Connecticut Supreme Court decision of Rothv. Weston, 259 Conn. 202, 789 A.2d 431 (2002). The Roth v. Weston
decision articulated a direction in which to read the provisions of General Statutes § 46b-59. The decision overruled, in part, and dramatically changed the standards as set in Castagno v. Wholean. In doing so, the Connecticut Supreme Court referenced the United States Supreme Court decision in Troxel. Specifically, the Roth court noted that the United States Supreme Court in Troxel maintained that "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a `better' decision could be made." Troxel v. Granville,supra, 530 U.S. 72-73.
Further, our Supreme Court concluded that the "threshold requirement articulated in Castagno fails to protect adequately the fundamental right to rear one's child and the right to family privacy. Accordingly, the holding in Castagno that the child court has jurisdiction to entertain a petition for visitation when the family life of the minor child has been disrupted in a manner analogous to the situations included within §46b-56 and 46b-57 is hereby overruled." Roth v. Weston, supra,259 Conn. 217.
In order to protect the constitutional rights articulated underTroxel, the Supreme Court indicated that as a threshold requirement, a person petitioning for visitation under § 46b-59 was required to CT Page 4357 allege and establish a parent-child relationship between themselves and the minor children subject of the action. Secondly, there must be an allegation "that the parent's decision regarding visitation will cause the child to suffer real and substantial emotional harm." Roth v.Weston, supra, 259 Conn. 226. In that regard, the court specifically stated that the harm alleged must be a degree of harm analogous to that set out by General Statutes § 46b-120 and § 46b-129. That is, an allegation of a child being neglected, uncared-for or dependent, as those terms have been defined.
The question presented by this motion is whether the standard articulated in Roth v. Weston, invalidates the prior orders in this case which have allowed for grandparent visitation.
The decision of Judge Resha in Buchalter v. Buchalter, Superior Court, judicial district of New Britain, Docket No. FA 99 0493218 examines an almost identical situation. In that decision, the court concluded that the Roth v. Weston decision does "not distinguish cases in which visitation previously existed with or without the benefit of court orders." Buchalter v. Buchalter, supra, Superior Court, Docket No. FA 99 0493218. The court points to the fact that the conclusions of the Roth
court were based upon the parents' constitutional rights to make decisions for and on behalf of their children.
Notably, the matter of Crockett v. Pastore, 259 Conn. 240 (2002), also involves a decision in which grandparent visitation had been ordered and had been ongoing for some time. The court remanded that case with instructions to dismiss for want of jurisdiction. The case of Clementsv. Jones, 71 Conn. App. 668 (2002), applies the standard in the same way, as does Foster v. Foster, no. FA 01-0558204, Superior Court, judicial district of New London, Docket No. FA 01 0558204 (August 19, 2002, Frazzini, J.) (33 Conn.L.Rptr. 24), which presents an analogous situation. In addition, see DeNardo v. Bergamo, Superior Court, judicial district of Waterbury, Docket No. FA98-0148318 (October 18, 2002, Petroni, J.) (33 Conn.L.Rptr. 362, 2002 Ct. Sup. 1306).
The court hereby finds that the allegations in the instant matter do not rise to the level required under our present standards. In addition, the factual background of this case does not support a claim that the petitioners have a parent-child relationship with the children. Neither is it alleged, nor do facts support, that there will be "substantial harm" to the children if visitation is denied.
The court concludes that the decision of Roth v. Weston does override the prior court orders in this matter granting visitation rights to CT Page 4358 non-parent third parties against the wishes of a fit custodial parent.
Accordingly, the motion to dismiss for lack of subject matter jurisdiction is hereby granted.
 BY THE COURT Antonio C. Robaina, J.
CT Page 4359