[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION TO REOPEN AND DISMISS
The question presented by this case is whether a parent who entered into a stipulated judgment providing for visitation of her child by a person not legally the parent of the child can later collaterally attack that judgment by a motion to dismiss asserting lack of subject matter jurisdiction.
The court denies the respondent's motion. First, the court had jurisdiction to enter the judgment at the time it did so. Secondly, a collateral attack on a stipulated judgment under these circumstances is impermissible. Finally, the claims in the petitioner's complaint provide a basis for the court to hear and decide the matter.
 BACKGROUND
On January 4, 2002, the plaintiff commenced an action pursuant to Section 46b-59 of the Connecticut General Statutes for visitation with the minor child, Nicholas Frederick, born on December 16, 1998. On February 7, 2002, when both parties were represented by counsel, they entered into a written stipulation setting forth a plan of visitation between the plaintiff and the child. The stipulation was accepted and entered as a judgment by the court after a canvas of the parties. On May 7, 2002, the defendant filed a Motion to Reopen and Dismiss, asserting that the court lacked subject matter jurisdiction to enter the judgment.
On January 29, 2002, after the action was commenced but before the parties asked the court to enter judgment in accordance with their stipulation, the Supreme Court decided two cases which are central to this matter, Roth v. Weston, 259 Conn. 202 (2002) and Crockett v.Pastore, 259 Conn. 240 (2002). In Roth, the Supreme Court held:
. . . there are two requirements that must be satisfied in order for a court: (1) to have jurisdiction over a petition for visitation contrary to the wishes of a fit parent; and (2) to grant such a petition. CT Page 4195
First, the petition must contain specific, good faith allegations that the petitioner has a relationship with the child that is similar in nature to a parent-child relationship. The petition must also contain specific, good faith allegations that the denial of the visitation will cause real and significant harm to the child . . . It must be a degree of harm analogous to the kind of harm contemplated by 46b-120 and 46b-129, namely that the child is "neglected, uncared-for, or dependent." Only if these specific, good faith allegations are made will a court have jurisdiction over a petition.
Roth, 234-35. A party who cannot make these good faith allegations lacks standing to bring the action. Id. 219
 DISCUSSION
In this case, the complaint alleged that the petitioner not only had a parent-like relationship with the three-year-old child, but in fact that she had a parenting relationship. It alleged that the child was born to the respondent, with whom the petitioner had had a long-standing domestic partnership, as a result of the artificial insemination of the respondent, and that the respondent was committed enough to having the petitioner act as a parent that she gave the child the petitioner's surname as his own. The petitioner also alleged that the respondent's actions [in denying contact between the child and the petitioner] "are extremely detrimental to Nickolas' well-being."
The parties agree that they cannot confer subject matter jurisdiction on the court, either by waiver or consent. See Jolly, Inc. v. ZoningBoard of Appeals, 237 Conn. 184, 192 (1996); Practice Book, Section 10-33. However, they did not do so. Rather, the court had jurisdiction under Section 46b-59 of the General Statutes[1] to enter judgment in accordance with the stipulation. The court in Roth did not find Section 46b-59 unconstitutional. Roth, 233-34. Rather, it imposed requirements which must be met by parties seeking visitation of children against the wishes of the parents. There is nothing in Roth or Crockett which deprives parents of the right to grant visitation or denies jurisdiction to the court to enter judgments regulating such visitation if it is found to be in the best interests of the child. The tests for the sufficiency of allegations and proof set forth in Roth must be met when the action is "contrary to the wishes of a fit parent." Roth, 234. Here, the judgment was entered in accordance with and not contrary to the wishes of the legal parent. Accordingly, the court had jurisdiction to enter the judgment. CT Page 4196
Once the judgment was entered by the court, the collateral attack on it based on a claim of lack of subject matter jurisdiction was inappropriate. It is true that "a lack of subject matter jurisdiction can be raised at any time and cannot be waived by either party." Arseniadisv. Arseniadis, 2 Conn. App. 239, 242 (1984). However, a party "cannot belatedly contest subject matter jurisdiction when he `was fully aware of the consequences of the [decree] and had the opportunity to fully litigate the question of jurisdiction in the original action, but, by stipulation, agreed without reservation to the terms of the orders which he now challenges.'" Connecticut Pharmaceutical Association v. Milano,191 Conn. 555, 560 (1983). The Supreme Court's decisions in Roth andCrockett had already been published when the parties in this matter asked the court to accept their stipulation for judgment. "The modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal." Monroe v. Monroe, 177 Conn. 173, 178 (1979).
Finally, the allegations in the petitioner's complaint would be sufficient to establish jurisdiction even if the respondent had opposed the complaint. The petitioner alleged a parenting relationship with the child which had lasted throughout his life, thus establishing the first prong of the Roth test. "It is the nature of the relationship, not the nomenclature, that satisfies the constitutional mandate." Crockett, 248. She also alleged that a denial of contact with the child would be extremely injurious to him. The Supreme Court held that the level of emotional harm required to be alleged and proven is the level of harm delineated in Sections 46b-120 and 129 of the General Statutes, "namely, that the child is `neglected, uncared-for or dependent' as those terms have been defined." Roth, 226.
In so holding, the court did not impose the use of talismatic language as a pleading requirement. Rather, it required pleading and proof consistent with the enumerated statutes. Section 46b-120 provides that a child can be found "neglected" if the child "is being denied proper care and attention, physically, educationally, emotionally, or morally." The emotional impact on a child of being deprived of contact with a person with whom he has lived throughout his life cannot be determined by a motion to dismiss.[2]
Accordingly, the Motion to Reopen and Dismiss is denied.
 BY THE COURT, GRUENDEL, J.
CT Page 4197